**UNITED STATES of America**

v.

**James DENTO, alias James Dansykle, alias James Van Syckle, Appellant.**

**No. 16216.**

United States Court of Appeals
Third Circuit.

Argued May 26, 1967.

Decided Aug. 2, 1967.

Certiorari Denied Nov. 6, 1967.
See 88 S.Ct. 307.

Frederick W. Andrews, Harrisburg, Pa., for appellant.

Thomas J. Hanlon, Asst. U. S. Atty., Scranton, Pa. (Bernard J. Brown, U. S. Atty., Scranton, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

Defendant, James Dento, was found guilty of possessing and attempting to pass a falsely made and counterfeited $20 Federal Reserve Note in violation of 18 U.S.C. § 472. This is an appeal in forma pauperis from that conviction.

On March 6, 1965, at about 5:03 P.M., defendant entered Evans Food Market in Harrisburg, Pennsylvania where he selected a number of goods totalling $1.35. At the check-out counter defendant presented a twenty dollar bill to the clerk, Mrs. Grace A. Luty, who noticed that the bill's serial number matched a serial number on a warning list distributed by the Secret Service. At this point Mrs.

Luty either returned the bill or had it taken from her by the defendant who then paid for his purchase with other currency. Dento left the store, followed by Mrs. Luty, and got into a black Dodge sedan with a New Jersey registration. Before defendant drove away Mrs. Luty had enlisted the aid of a passer-by, Mr. Cecil Hughes, who took down the car's license number.

The Pennsylvania State Police notified Secret Service agent Robert E. Powis in Scranton, Pennsylvania of the Harrisburg incident and informed Powis that the car was registered to a James D. Van Syckle (an alias used by defendant Dento), 2 Hallstead Street, Clinton, New Jersey. Agent Powis relayed this information to the Secret Service office in Newark, New Jersey which had charge of the Clinton area. At about 9:40 P.M. on March 6th special agent Wood of the Newark office called agent B. J. Mullady requesting the arrest of Van Syckle based on the information received from the Secret Service office in Scranton. Mullady was also instructed to contact the Clinton Police and the New Jersey State Police and ask that Van Syckle be taken in custody in the event he could be located. Mullady talked with Chief Schneider of the Clinton Police who told the agent that Van Syckle was well known to him and that he would check the Hallstead Street address and advise Mullady if the automobile was there. The New Jersey State Police also informed Mullady of their familiarity with defendant and that they would look out for Van Syckle and notify the Secret Service if he was apprehended. Besides the call from agent Mullady the New Jersey State Police were warned of defendant's possible presence in their vicinity by a teletype message from the Harrisburg Police Department containing the suspect's license number.

It appears that the defendant did not return to Clinton until sometime on Sunday, March 7, 1965. That same day at approximately 4:40 P.M. state troopers Richard Decker and Jack Cole of the Clinton barracks observed Van Syckle driving his car on Route 22 near Clinton and motioned the defendant to the side of the road. As defendant was pulling off the highway both troopers noticed him lean forward and apparently place something under the front seat of the car. When defendant stopped the car he was informed by trooper Decker that he was under arrest for attempting to pass a counterfeit $20 Federal Reserve Note the previous day in Harrisburg, Pennsylvania. For reasons of safety there was no search made of defendant's car while it was parked along Route 22. The suspect's car was driven to the State Police barracks at Clinton where a search under the driver's seat uncovered a wallet containing seven counterfeit $20 notes and five counterfeit $10 notes. At 5:00 P.M. on March 7th, trooper Decker called agent Mullady informing him of defendant's arrest and the seizure of the additional bogus bills. The arrest of defendant and the search of his automobile were effectuated without either an arrest or search warrant and the evidence obtained by the search was introduced by the Government at *defendant's* trial.

Defendant's sole contention is that the evidence seized by the New Jersey State Police was introduced at trial in violation of his constitutional rights. This position rests on two fundamental points: the necessity of a warrant for both the arrest and search, and the legality of the arrest and incidental search without a warrant.

I

The argument is made that since the arresting officers had received information concerning defendant's activities some hours before his apprehension there was sufficient time in which to procure a warrant for his arrest and for the search of his person and car. Naturally it must be assumed for this point that the knowledge possessed by the troopers was sufficient to establish probable cause for defendant's arrest, since if the arrest without a warrant lacked prob-

able cause it could not be justified on any grounds. Also, assuming a lawful arrest there is no need to discuss the necessity of a search warrant when the search is incident to that lawful arrest. Ker v. State of California, 374 U.S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). To put the resulting query from such circumstances simply, may probable cause alone justify an arrest where it appears that the arresting officers had ample time within which to obtain a warrant? Notably the Supreme Court has never directly passed on this question. Jones v. United States, 357 U.S. 493, 500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). However, it will not be necessary for this Court to examine the full import of the problem since the opportunity for the arresting officers to apply for a warrant in this appeal never reasonably presented itself.

■ Defendant was arrested by the New Jersey State Police less than twenty-four hours after he had tried to pass counterfeit money in Harrisburg, Pennsylvania. From the time he left Evans Food Market on Saturday, March 6th, the defendant was never located until troopers Decker and Cole sighted his car on Sunday afternoon, March 7th. Before that time defendant's whereabouts was unknown. This is not a situation where a suspect's presence has been pinpointed and the police are coordinating their operations in a direct effort to secure an arrest. The State Police did not set out on Sunday afternoon to arrest the defendant, they were only warned to be on the lookout for him. Here it was the defendant who happened to come within view of the state troopers and at that stage his arrest was immediate. Moreover when the troopers spied Dento it was their duty to apprehend him since there was the sound possibility that the suspect's excursion along Route 22 was an attempt to leave the Clinton area where his identity to the police was much too well known.

## II

■ Defendant also questions the legality of his arrest without a warrant and the reasonableness of the search as incident to that arrest. The legality of a warrantless arrest hinges on the existence of probable cause, i. e., where facts and circumstances known to the arresting officers reasonably lead them to believe that a crime has been or is being committed. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Ker v. State of California, supra; State v. Cook, 47 N.J. 402, 221 A.2d 212 (1966). The Harrisburg Police acting on a reliable account by Mrs. Luty, that she had found the serial number on the note passed by defendant to match a serial number on a Secret Service warning list, contacted the New Jersey State Police and the Secret Service. The Secret Service had also communicated with the New Jersey State Police concerning defendant, so when the arrest was made not only were the state troopers aware of the Harrisburg events but also knew the identity of the suspect along with a description of the car he was driving and its license number. We do not decide the question of whether the information received by the State Police amounted to probable cause solely because it was received through official law-enforcement channels. United States v. Juvelis, 194 F.Supp. 745 (D.N. J.1961). But it seems clear that if facts, sufficient upon which to base probable cause, known to the arresting officers are received through some chain of communication, that chain of information from its source to the resulting arrest must be constructed with reliable links. United States v. Bianco, 189 F.2d 716 (3 Cir. 1951); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This does not mean that the arresting officers have to know the ultimate source of their information, but only that the chain, once formed, be reliably cohesive. In this instance the police were apprised of defendant's illegal activities by two trustworthy wit-

nesses, one of whom had been the intended victim in an attempt to pass a counterfeit twenty dollar bill and the other who aided in the identification of defendant's car and license number. Thus, the official police communications received by the New Jersey State Police, anchored in a reliable eye witness account of the crime, were of sufficient authority to warrant the arrest of the defendant on probable cause.

█ Even though defendant was lawfully arrested any search incident thereto may only be proper if conducted within the constitutional framework relating to reasonable searches and seizures. Ker v. State of California, supra; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961). The arrest of the defendant took place on Route 22, but there was no search carried on at that locality. Subsequent to the arrest and for reasons of safety, officer Decker drove defendant's car back to the Clinton barracks where the search was conducted. Since there is no attempt to validate the search under any forfeiture proceedings, cf. Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the reasonableness standards adopted by the Supreme Court in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), will control. In Preston the police received a call at three o'clock in the morning that three suspicious men were seated in an automobile that had been parked in the town's business district since 10:00 P.M. the previous evening. The police questioned the men and, when they were not satisfied as to their true intentions, arrested the trio for vagrancy. There was no search made of the auto at the time of arrest and after it had been driven to the station by an officer it was then towed to a garage. Only after the three men had been booked did the police go to the garage and search the car—finding guns and other items implicating the men in a conspiracy to rob a bank. Speaking for the Court Mr. Justice Black stated that "[W]e think that the search was too remote in time or place to have

been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." 376 U.S. 364 at 368, 84 S.Ct. 881 at 884. Although this appeal superficially bears resemblance to the facts in Preston it is essentially well within the constitutional guidelines justifying a search incidental to a lawful arrest.

The troopers first sighted Dento driving along Route 22 at approximately 4:40 P.M. Twenty minutes later, at 5:00 P.M., trooper Decker was on the telephone with agent Mullady relating the arrest of the defendant and the finding of the counterfeit bills in the car. Clearly from the facts, the search of Dento's automobile was substantially contemporaneous with his arrest. See Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Although the place of the search was remote from that of the arrest, the safety of the officers and defendant required that the vehicles be moved away from the flow of highway traffic. This is not a situation where the police take the car to the station in order to conduct a fishing expedition for evidence. Before the arrest was made troopers Decker and Cole had every reason to suspect that the defendant was hiding something in connection with his alleged offense since, when they motioned Dento's car to the side of the road, both officers noticed him lean forward and apparently put something under the front seat. Once defendant's car was removed to the safety of the Clinton barracks the police immediately began the search which uncovered the counterfeit money.

█ Under the facts before us Preston v. United States, supra, does not control and we are satisfied that the search before us was reasonable. There are two basic points of departure separating the Preston decision from this appeal. First, unlike Preston the instant search was substantially contemporaneous with the arrest (the entire arrest and

**366**

search procedure was completed within twenty minutes). Secondly, there was a reasonable nexus between the offense the defendant was arrested for and the search of his automobile, where as in Preston the search was entirely unrelated to the arrest on the charge of vagrancy. In distinguishing Preston we do not overlook the statement made by the Supreme Court that "[o]nce an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." 376 U.S. 364 at 367, 84 S.Ct. 881 at 883. However, no situations are identical and a judicial examination into the reasonableness of a search depends a great deal upon the facts and circumstances of the individual case. Cf. United States ex rel. Murphy v. State of New Jersey, 260 F.Supp. 987 (D.N.J.1965), aff'd, 369 F.2d 698 (3 Cir. 1966), cert. denied, 386 U.S. 965, 87 S.Ct. 1044, 18 L.Ed.2d 114 (1967). Explaining Preston, the Supreme Court stated in Cooper v. State of California, 386 U.S. 58, 59, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967):

> "We made it clear in Preston that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property."

Thus, in the ambiance which marked the search of the defendant's car the officers were justified in taking reasonable safety precautions, necessitating the removal of the cars from the highway, and seeing to it that those precautions should not invalidate a search otherwise incidental and reasonable. Therefore, since there was no violation of defendant's constitutional rights, the evidence seized by the New Jersey State Police was properly introduced at trial.

The judgment of the District Court will be affirmed.