**UNITED STATES of America ex rel.
Henry JOHNSON, H–8407**

**v.**

**R. L. JOHNSON, Superintendent.**

**Civ. A. No. 71–1528.**

United States District Court,
E. D. Pennsylvania.

March 10, 1972.

Henry Johnson, pro se.

Arlen Specter, Dist. Atty., Mark Sendrow, Asst. Dist. Atty., Philadelphia County, Philadelphia, Pa., for respondent.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

 This is a petition for a writ of habeas corpus by a state prisoner who is serving a five to ten year sentence following his conviction by Judge Robert W. Honeyman of the Court of Common Pleas of Montgomery County, Pa., sitting without a jury, of the crimes of burglary, larceny, and conspiracy. In his petition, relator claims entitlement to relief on essentially three grounds: (1) that he was arrested without probable cause; (2) that the search of the automobile in which he was riding at the time of his arrest violated the Fourth Amendment; and (3) that the testimony of his co-defendant, Albert Johnson, exonerated him of the crimes charged. Relator has essentially exhausted his available state remedies and his case is properly before us for an adjudication of his constitutional claims.[1]

---

1. Following his conviction, relator moved for a new trial and for arrest of judgment. His motions were heard by the Court of Common Pleas, en banc, and were denied per curiam on April 29, 1969. The Superior Court of Pennsylvania affirmed his conviction per curiam on February 5, 1970, Commonwealth v. Johnson, 216 Pa.Super. 785, 261 A.2d 102.

In his petition, petitioner alleged that the Supreme Court of Pennsylvania had "Denied Per Curiam" his Petition for Allowance of Appeal. We accepted this allegation and proceeded with the research and writing of this opinion. Just prior to filing, we learned from the Prothonotaries of the Superior and Supreme Courts that no such appeal had been taken. We feel that justice would

Since the only issues which we must now decide concern facts which are amply developed in the existing state court records, we deem it unnecessary to hold an evidentiary hearing.[2] Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963). For the reasons stated herein, we must deny relator's petition.

We shall first consider the question of probable cause for relator's arrest, i. e., did the "facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed [citations omitted]." Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). Accord, United States v. Dento, 382 F.2d 361 (3d Cir. 1967), cert. denied, 389 U.S. 944, 88 S.Ct. 307, 19 L.Ed.2d 299, rehearing denied, 389 U.S. 997, 88 S.Ct. 493, 19 L.Ed.2d 502. Since questions of probable cause must be viewed in light of all the surrounding circumstances, a particularized recitation of the facts is necessary to our discussion. The facts are ably summarized by Judge Honeyman in his opinion:

"On Sunday, January 14th, 1968, at approximately 4:35 a. m., an Officer of the Springfield Township Police was on motor patrol in the vicinity of the intersection of Bethlehem Pike and Mill Road. As he approached the intersection he observed a car starting to pull out of a closed gas station onto Bethlehem Pike. As the Officer proceeded to the gas station the car stopped, backed up and parked. At this time, with the exception of a small light in the gas station, the station was dark.

After the Officer drove into the station and parked in front of the car the two occupants, the defendants, alighted from the car and walked over to the police car. The driver, defendant Albert Johnson, upon request of the Officer, who was still in his car, produced his driver's license. The license indicated that the defendant lived at 4316 Terrace Street, Philadelphia, Pennsylvania. When asked to produce his owner's card, the driver said that it was inside the gas station. He went on to explain that he had had his car repaired in the station earlier in the day and then had gone to Allentown. On the return trip from Allentown the car trouble reoccurred and he had pulled into the gas station to leave the car for further repairs. The defendants then asked for the location of a pay phone and were directed to a telephone booth adjacent to an Acme market which was approximately 100 yards away. The two defendants then walked towards the telephone booth.

After they had left, the Officer pulled his car around behind the defendants' car and noted its license number. He then made a radio call to the County Police Radio Room to ascertain the registered owner of the car. He was told that the car was registered in the name of a Lucille Philpot of Philadelphia.

Upon receiving this information the Officer got out of his car and with

---

not be best served by dismissing this petition, thereby requiring the petitioner to seek further relief in state court with the probable eventual filing of a second petition for writ of habeas corpus. Two considerations militate against dismissal at this juncture for failure to exhaust:

(1) the unlikely success of a petition to appeal *nunc pro tunc* in state court and, even if granted, the unlikely success of that appeal in light of the Pennsylvania Supreme Court's unfavorable ruling on the co-defendant's timely appeal; and

(2) the fact that "[t]he rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of power.' [citations omitted]." Fay v. Noia, 372 U.S. 391, 420, 83 S.Ct. 822, 839, 9 L.Ed.2d 837 (1963).

Accordingly, we have reached the merits of relator's petition.

2. The record is comprised of testimony taken at the pretrial motion to suppress evidence (which was denied) and at the trial itself.

the aid of a flashlight looked into the defendant's automobile. He observed two large boxes filled with between 300 and 400 cartons of cigarettes on the back seat and a five foot length of angle iron, partially covered with ice and snow, in the front seat.

The Officer, after making this observation, drove over to the defendants who were in the vicinity of the telephone booth. He arrested the defendants for larceny of the automobile and for possession of stolen goods, i. e., cigarettes. The defendants were then taken back to the car and the trunk was opened. Inside were found many loose cartons of cigarettes.

The defendants were then taken to the Springfield Township Police Building. The next morning the arresting Officer swore out an affidavit for a search warrant and a warrant was issued by Justice of the Peace Thomas Jenkins. A search was subsequently made of the car. The items seized, the angle iron and cigarettes, were physically shown to Mr. Jenkins but no written return was made on the warrant itself. The warrant and the affidavit were retained by the Police until the Court hearing on the defendants' Motion to Suppress."

While the caselaw has enunciated certain basic standards, in the final analysis, probable cause must be determined on a case by case basis in light of the totality of surrounding circumstances existing at the time of the arrest. Our analysis of the facts reveals a number of ingredients relative to a finding of probable cause.

The suspects were first observed at 4:30 A.M. on a Sunday morning, pulling out of a closed gasoline station; as the officer proceeded to the gas station, their car backed up and parked. The driver, who also represented himself to be the owner of the car,[3] did not live in the immediate area, and could not pro-duce proof of ownership. His justification for his presence at a closed gas station, i. e., that he was bringing the car in for repairs on his return from Allentown, was suspicious in light of the officer's personal observation that when he first saw the car, it was exiting from the gas station and was not entering or parked. Furthermore, the information received by the officer that the license plate (and apparently the car) was registered in another's name, with no apparent connection with the driver, was at variance with the representation that the driver owned the car. As of this point, the officer at least had reason to be highly suspicious that a crime had been or was being committed by relator and his companion.

We do not have to decide if probable cause to arrest the relator existed at this point in time because the presence in the car of the two large boxes full of cartons of cigarettes and the long length of "angle iron" covered with snow and ice, when combined with the other facts known by the officer, clearly created probable cause. However, if the search of the interior of the car from the outside with a flashlight by looking through the windows constituted an illegal warrantless search, then the knowledge gained through an illegal search cannot be used as an indicia of probable cause to arrest. Alderman v. United States, 394 U.S. 165, 176–177, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *But see,* Scearce v. Field, 292 F.Supp. 807 (C.D. Cal.1968).

On similar facts, some courts have concluded that there was not a "search" within the meaning of the Fourth Amendment. United States v. Hanahan, 442 F.2d 649 (7th Cir. 1971); United States v. Johnson, 431 F.2d 441 (5th Cir. 1970) (alternative holding); United States v. Polk, 433 F.2d 644 (5th

---

**3.** From the record, it is apparent that the driver consistently referred to the car as "his" car, although the officer never directly asked him if he actually owned the car.

Cir. 1970); United States v. Morales, 440 F.2d 1332 (5th Cir. 1971); Gil v. Beto, 440 F.2d 666 (5th Cir. 1971). Other courts have held that there was a search but that it was reasonable. Marshall v. United States, 422 F.2d 185 (5th Cir. 1970); United States v. Vilhotti, 323 F.Supp. 425 (S.D.N.Y.1970). *Also,* United States v. Johnson, *supra* (alternative holding). Regardless of the basis for upholding these visual acts, the cases require that the officer have the right to be in the position to have that view. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). In this case, it is obvious that the officer who was on the premises of a gasoline service station which is open to the public met this requirement. Therefore, we conclude that the knowledge of the cigarettes and angle iron was lawfully obtained by the officer for "what a person knowingly exposes to the public is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L. Ed.2d 312 (1966); United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L. Ed. 898 (1924)." Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 2059 n. 6, 29 L.Ed.2d 564 (1971) (Mr. Justice Black, concurring and dissenting).[4]

■ We find that the presence of some 200 cartons of cigarettes on the back seat of a passenger motor vehicle[5] is highly unusual; the normal smoker does not purchase cigarettes in such large quantities. Moreover, where there is visualized in the same car an "angle iron" still covered with ice and snow which indicates that it had been used very recently (for there was snow on the ground at the time), the point is reached when a group of facts, no one of which would constitute probable cause, but each one of which is highly suspicious, fits together to cement the pattern. In our view, the combined and collated facts are such as would reasonably lead a prudent officer to believe that a felony has been committed. Having found that probable cause existed for the warrantless arrest of relator, we must determine if the warrantless search at the scene and the warrantless search and seizure at the police station comport with the requirements of the Fourth Amendment.[6]

■ We disagree with the characterization that the trial judge and the relator have given the searches and seizure involved in this case. They both have described it as a search and seizure incident to arrest. Such a characterization of the issue, if accurate, would invalidate the seizure of the contraband at the police station for " '[o]nce an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to arrest.' " Chambers v. Maroney, 399 U.S. 42, 47, 90 S.Ct. 1975, 1979, 26 L.Ed.2d

4. Our discussion of this point would not be complete without some reference to the opinion in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Mr. Justice Stewart (with Justices Douglas, Brennan and Marshall concurring in that portion of the opinion) presented a thorough discussion of the "plain view" exception to the warrant requirement. A careful reading of that discussion discloses that it is unapplicable to this part of our case. The thrust of Justice Stewart's discussion concerns the *seizure* of evidence or contraband after a search is already in progress. Here, we are not concerned with the seizure of the cartons of cigarettes, but whether the knowledge of its presence in the car was lawfully obtained by the officer, which knowledge can be added to other facts otherwise lawfully obtained in order to constitute probable cause for arrest.

5. 375 to 400 cartons were seized from the back seat and the trunk of the car. At trial, it was estimated that the majority of the cartons were contained in boxes located on the back seat.

6. Both searches must be judged by exceptions to the warrant requirements since the subsequently-obtained search warrant is conceded to be defective because the police failed to return the warrant and affidavit to the Justice of the Peace.

419 (1970), citing Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Moreover, the search incident to arrest theory might not support the search of the trunk at the gas station, since the relator was under arrest and in custody at the parking lot across the street from the gas station where the car was located. However, as we shall see *infra*, we are not confronted with the thorny problems attendant to the search incident to arrest theory, for the recent case of Coolidge v. New Hampshire, *supra*, reaffirms the principles of automobile searches as first enunciated in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[7]

 *Coolidge* makes clear that the warrantless search of an automobile must meet two requirements—(1) probable cause to search; and (2) "exigent circumstances."[8] The first requirement is satisfied if the officer has probable cause to believe that contraband, weapons or evidence of a crime[9] will be found in the car. Moreover, the right to search is not determined by the right to arrest.

"The Court [in *Carroll*] also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the arresting officer has for belief that the contents of the automobile offend against the law.'" Chambers v. Maroney, *supra*, 399 U.S. at 49, 90 S.Ct. at 1980, citing Carroll v. United States, *supra*, 267 U.S. at 158–159, 45 S.Ct. 280.

Therefore, we are not bound by the spatial limitation imposed by the search incident to arrest theory, except as it relates to the second requirement—the presence of "exigent circumstances." But as for the probable cause (the first requirement), the circumstances that give rise to probable cause for arrest are often (as they are here) the same that will furnish probable cause for a search.[10] Chambers v. Maroney, *supra*, 399 U.S. at 47, n. 6, 90 S.Ct. 1975. We, therefore, conclude that the arresting of-

---

**7.** *See also*, Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

**8.** "[Our] legal system . . . regards warrantless searches as 'per se unreasonable' in the absence of 'exigent circumstances.'" Coolidge v. New Hampshire, 403 U.S. 443, 470, 91 S.Ct. 2022, 2040 (1971).

**9.** *See*, Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782.

**10.** There are circumstances where probable cause to arrest exists but probable cause to search is lacking. In Preston v. United States, *supra*, the defendants were arrested for vagrancy. While the court found that the arrest was valid, there could be no probable cause to search because there are no fruits or instrumentalities of the "crime" or vagrancy subject to seizure. Likewise, in

Dyke v. Taylor Implement Manufacturing Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538, the court found that there was no probable cause to search a car, the occupants of which had been arrested for reckless driving. The court stated that the *Carroll* line of cases insisted that the searching officers have " 'probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." *Id.* at 221, 88 S.Ct. at 1475.

It should be noted that probable cause to believe that an automobile is stolen apparently will justify an immediate warrantless search. Preston v. United States, *supra*, 376 U.S. at 367–368, 84 S.Ct. 881. *See also*, Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

There may be situations where an officer has probable cause to stop an automobile on the highway and conduct a warrantless search, but he does not have probable cause to arrest. Such a situation would exist when the police have received information from a reliable in-

ficer had probable cause to conduct an immediate warrantless search of the automobile.

■ Having found that the arresting officer had probable cause to search, we must next decide if "exigent circumstances" existed for "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" Coolidge v. New Hampshire, *supra*, 91 S.Ct. at 2039.[11] An examination of *Coolidge* is illustrative for this purpose. While the Court in *Coolidge* conceded that the arresting officers had probable cause to search the defendant's auto while it was parked in his driveway, it found no "exigent circumstances." The following quotation from *Coolidge* will not only validate the court's conclusion, but will also highlight some of the types of situations consti-

tuting "exigent circumstances" sufficient to justify an automobile search.

"In this case, the police had known for some time of the probable role of the Pontiac car in the crime. Coolidge was aware that he was a suspect in the Mason murder, but he had been extremely cooperative throughout the investigation, and there was no indication that he meant to flee. He had already had ample opportunity [about 4 weeks] to destroy any evidence he thought incriminating. There is no suggestion that, on the night in question, the car was being used for any illegal purpose, and it was regularly parked in the driveway of the house. The opportunity for search was thus hardly 'fleeting.' The objects which the police are assumed to have had probable cause to search for in the car

formant that the fruits of a recent crime are hidden in a particular car but the same information exonerates the occupants of the car.

11. The *Carroll* line of cases are often cited to justify a distinction between an automobile and a home in terms of circumstances allowing a warrantless search. Chambers v. Maroney, *supra*, 399 U.S. at 48, 90 S.Ct. 1975. This concept has spawned what is called the "automobile exception" to the warrant requirement. In a sense, such language has only clouded the real issues vis-a-vis automobile searches, for in terms of pure legal issues there is no "automobile exception." As stated previously, automobiles, like homes or offices, cannot be searched without a warrant except on probable cause and when accompanied by "exigent circumstances." As we see it, then, the standard to be applied is essentially the same regardless of the object to be searched. What has created the distinction is what normally inheres in the very nature of the object searched and not the application of different standards. Generally, courts have presumed the existence of "exigent circumstances" when the validity of an automobile search is questioned for "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained" Chambers v. Maroney, *supra*, at 51, 90 S.Ct. at 1981. On the other

hand, courts have generally presumed that there are no "exigent circumstances" to justify a warrantless search of a home or office.

This is not to suggest that the stringent standards for a warrantless search would *never* allow a warrantless search of a home or office, but it is a great deal more difficult to sustain the existence of "exigent circumstances" in such a situation. Likewise, we do not suggest that "exigent circumstances" are *always* present in searches of automobiles.

"Neither *Carroll*, *supra*, nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords." Chambers v. Maroney, *supra* at 50, 90 S.Ct. at 1980. We feel that this language infers what we are here saying, *i. e.*, that it is at least difficult to sustain the nonexistence of "exigent circumstances" in automobile searches. We do not conclude that any search of an automobile with probable cause is *per se* reasonable (*see*, Mr. Justice Stewart's characterization of the concurring and dissenting opinion by Mr. Justice White, Coolidge v. New Hampshire, *supra*, 91 S.Ct. at 2045), only that "exigent circumstances" are far more likely to be present in automobile searches than in house searches.

were neither stolen nor contraband nor dangerous.

. . . There was no way in which he could conceivably have gained access to the automobile after the police arrived on his property. When Coolidge had been taken away, the police informed Mrs. Coolidge, the only other adult occupant of the house, that she and her baby must spend the night elsewhere and that she could not use either of the Coolidge cars. Two police officers then drove her in a police car to the house of a relative in another town, and they stayed with her there until around midnight, long after the police had had the Pontiac towed to the station house. The Coolidge premises were guarded throughout the night by two policemen.

The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile." Coolidge v. New Hampshire, *supra*, 91 S.Ct. at 2035–2036.

It is readily apparent why the court concluded that there were no "exigent circumstances" to justify a warrantless search or seizure.[12]

However, contrary to *Coolidge*, the facts of this case present numerous kinds of the "exigent circumstances" enumerated there. The car was stopped on a public thoroughfare and thus mova-

ble. The arresting officer had probable cause to believe that contraband was contained in the auto. Obtaining a warrant would have necessitated "the inconvenience of a special police detail to guard the immobilized automobile." When the suspects went across the street to use the telephone, they may have been alerting a confederate to come and move the car or remove the contraband, or other confederates may have been in the vicinity, armed or otherwise ready for ambush.

We conclude that the warrantless search at the gas station was lawful because the officer's probable cause to search was accompanied by "exigent circumstances."

This does not end our discussion, however. We must decide if the warrantless search and *seizure* of the cigarettes, "angle iron", lighter fluid, etc., at the police station comports with the Fourth Amendment standards. In that regard, we are governed by Chambers v. Maroney, *supra*.

In *Chambers*, it was argued, in circumstances similar to the present ones, that when an arrest is made in a car on the open highway, and the car and the accused are transported to the police station, the question of probable cause to search the car should be submitted to a detached magistrate in the form of a search warrant. The car is no longer movable and the suspects are in custody. In short, it was contended that all of the "exigent circumstances" which justify a warrantless search on the highway no longer obtain at the police station. The court rejected this argument and held that when the initial intrusion is permissible under *Carroll*, i. e., when there are probable cause and "exigent circumstances" necessary to

12. In fact, *Coolidge* is almost *sui generis* because of the unusual set of circumstances, and we do not feel that it has disturbed, in any way, the law of automobile searches as enunciated in *Carroll* and its progeny; it is mainly the fruition of the warning in Chambers (see n. 11) that we cannot dispense with the search

warrant in every automobile search. Notwithstanding *Coolidge*, the existence of "exigent circumstances" accompanying automobile searches is still the normal rule but that determination must be made in each case after reviewing all of the surrounding circumstances.

justify a warrantless search of the car on the highway, a subsequent search made at the station house is also permissible.

> "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search [at the station house] without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." Chambers v. Maroney, *supra*, 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d 419.

Thus, the touchstone of the court's holding is probable cause.[13] The Court reasons that a suspect's Fourth Amendment rights are adequately protected if probable cause exists at the time that the automobile is stopped; the same probable cause to search is present when an immediate search is conducted at the station house. We conclude that the search and seizure at the police station were lawful and reasonable under the Fourth Amendment and that evidence was properly admitted at trial.[14]

■ The relator's final contention is that his co-defendant's testimony exonerated the relator from any complicity in the crime. Such matters of credibility must be left to the trial judge or jury and are not properly before this court to consider in a petition for a writ of habeas corpus. 28 U.S.C.A. § 2254; Trujillo v. Tinsley, 333 F.2d 185 (10th Cir. 1964); Judy v. Pepersack, 284 F.2d 443 (4th Cir. 1960); United States ex rel. Rooney v. Ragen, 173 F.2d 668 (7th Cir. 1949); United States ex rel. Williams v. Myers, 196 F.Supp. 280 (E.D.Pa.1961).

---

13. The court in *Chambers* is not unmindful of the "exigent circumstances" requirement of the warrantless search at the station house. However, the court takes a pragmatic approach to the problem.

> "The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search [at the station house] without a warrant and the car's immobilization until a warrant is obtained." Chambers v. Maroney, *supra* at 52, 90 S.Ct. at 1981.

14. It appears from the court's discussion that the search at the station house must be "immediate." It is possible that this qualification will pose line-drawing problems in future cases, but we are not presented with such problems here. As pointed out in *Coolidge*, 91 S.Ct. at n. 20, the search in *Chambers* was conducted "many hours" after the car had been removed to the station house. In the present case, the relator was stopped at 4:30 a. m., Sunday morning, and the search and seizure was started at the police station at 12:30 p. m., Sunday afternoon. Thus, the search and seizure in our case appears to be as "immediate" as it was in *Chambers*.