UNITED STATES of America ex rel.
Curtis DAVIS, Relator,

v.

William JENNINGS, Acting
Warden, Respondent.

Civ. A. No. 74–3220.

United States District Court,
E. D. Pennsylvania.

June 9, 1976.

Alan B. Vlcek, Thomas D. Panebianco, Indigent Prisoner Litigation Program, Philadelphia, Pa., for relator.

Anna Iwachiw Vadino, Asst. Dist. Atty., Media, Pa., for respondent.

## MEMORANDUM OPINION AND ORDER

A. LEON HIGGINBOTHAM, Jr., District Judge.

### INTRODUCTION

In his original petition for a writ of habeas corpus, filed December 17, 1974, the relator, Curtis Davis alleged that he was being unlawfully held in custody on three grounds: (1) evidence seized and used against him at trial was obtained as a consequence of an unlawful search and seizure; (2) identification testimony based on an illegal lineup was introduced against him at trial; and (3) he was denied a full and fair hearing at the Post-Conviction Hearing Act proceeding in the Pennsylvania courts. With regard to the first ground, he alleged that on the night of October 23, 1968, Ches-

ter, Pennsylvania police seized his automobile and conducted a warrantless search of it; that during the search the police seized pay stubs which allowed them to determine the address of his girl friend; that a search warrant for his girl friend's apartment was executed the following morning; and that evidence seized at the apartment and testimony about the seizure of his automobile were offered against him at trial. With regard to the second ground, he alleged that on January 23, 1969 the trial judge, though he suppressed a lineup in which relator appeared because relator was not represented by counsel, nevertheless permitted witnesses present at the lineup to identify the relator at trial; and that another judge in a different case ruled on March 25, 1969 that the testimony of witnesses present at the lineup was tainted by the lineup and, further, that police had improperly influenced the identification of relator at the lineup. With regard to the third ground, he alleged that the trial judge at his Post-Conviction Hearing Act proceeding on March 12, 1971 precluded him from contesting the legality of the search of his girl friend's apartment, and from cross-examining the detective who seized and searched his automobile on October 23, 1968.

On January 15, 1975, this Court approved and adopted the report and recommendation of United States Magistrate Richard A. Powers III, who had concluded that relator's third ground for habeas corpus review was meritorious and required this Court to accord relator a full, fair and complete hearing pursuant to 28 U.S.C. § 2254(d). As part of its January 15, 1975 Order, this Court scheduled such a hearing, which was eventually held on April 22 and 23, 1975.[1]

Prior to the hearing, relator moved for leave to amend his habeas corpus petition. In that motion, relator raised an additional ground for relief, namely, the alleged denial of his right to counsel and to confront the witnesses against him at his original trial

---

1. The holding of this hearing rendered relator's third ground for review moot. Accordingly, I shall not discuss it again in this Opinion.

for robbery.[2] Specifically, relator states that prior to the start of that trial, he informed the court that he did not wish to present a defense; that, during a colloquy with the court, he agreed that he intended to rely on his constitutional rights and that his counsel would deliver a summation to the jury on his behalf; that the court did not adequately determine whether this original waiver of counsel's assistance was knowing and intelligent; that the court did not adequately determine whether relator's subsequent waiver of speeches to the jury by his counsel was knowing and intelligent; and that relator's counsel failed to raise several important issues in relator's behalf.

At the hearing on April 22 and 23, 1975, relator was given full opportunity to present evidence on his constitutional claims. After reviewing all of this evidence and after examining the entire record of the state court proceedings in this case, I have concluded that relator has failed to prove a violation of his federal constitutional rights. Accordingly, for reasons that will hereinafter appear, his amended petition for a writ of habeas corpus will be denied, and will be dismissed with prejudice.

I.  The Search and Seizure Issue

Relators' first claim for relief is based upon the alleged illegality of a search and seizure of his automobile on the night of October 23, 1968. The state court record, the testimony given at the habeas corpus hearing and the exhibits presented during the hearing reveal that the claim is without merit.

On the night of October 23, 1968, three gas stations in Chester, Pennsylvania were held up by an armed robber within the same approximate one hour period, from 9:30 P.M. to 10:30 P.M. Witnesses at all three robbery locations described the robber to Chester police in substantially similar terms. A witness to the second robbery saw the robber leave the scene in a red and white 1960 Chevrolet. A witness to the third robbery saw an automobile of the same color, year and make, driven by a woman, in the vicinity of the robbery location just prior to the robbery. Approximately 15 minutes after the third robbery, Chester police located a red and white 1960 Chevrolet parked at Third & Flower Streets in Chester. The automobile's engine was still warm. It bore only temporary registration tags, so that its owner could not be identified through the Pennsylvania Bureau of Motor Vehicles until the following morning. The witness to the third robbery identified it as the vehicle he had seen just prior to the robbery. A search of the immediate area failed to locate the owner.[3] After arranging to have the automobile towed away and impounded but before the tow truck arrived, Chester police conducted a warrantless search of it to ascertain the identity of its owner. They found two pay stubs in the car, one belonging to relator and the other to Elizabeth Lewis, his girl friend. A search warrant was subsequently issued for Ms. Lewis's apartment. When it was executed, police seized items that were eventually used against relator at his criminal trial. Relator now challenges the warrantless search of his automobile and the subsequent search of Ms. Lewis's apartment as violative of his Fourth and Fourteenth Amendment rights.

---

2. Respondent argues that this issue—denial of the right to counsel and to confront witnesses—was never raised in any state court proceeding, that the relator has failed to exhaust his state remedies on this issue, and that the amended petition for a writ of habeas corpus should therefore be dismissed for want of federal jurisdiction. See Doc. # 10, filed February 18, 1975. The argument has some colorable merit; at best, the state court record is unclear on this point. In the interest of judicial economy, however, I shall assume that relator has indeed exhausted all available state remedies; and shall rule on the merits of his three remaining grounds for habeas corpus relief.

3. The search for the owner appeared to consist of police officers entering bars in the neighborhood and asking the patrons if the red and white 1960 Chevrolet belonged to them. Though relator claimed that he was drinking in a bar while the police were conducting this inquiry, neither he nor anyone else came forward to claim the automobile in question.

## A. The Automobile Search

In my judgment, the ultimate resolution of this claim by relator is controlled by *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).[4] There, after reviewing a series of "automobile search and seizure" cases and noting that, if a search warrant has not been issued, "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search," id. at 51, 90 S.Ct. at 1981, Mr. Justice White said that:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

[1] In the instant case, the two requirements for a warrantless automobile search —(1) probable cause, and (2) "exigent circumstances"—are clearly satisfied.[5] On the basis of testimony by eyewitnesses, the police had reason to believe that relator's automobile had been used in the commission of one or more felonies, a fact that alone would justify seizure of the vehicle as evidence. The police officer who seized and searched the automobile reasonably believed that its owner was responsible for three armed robberies in the preceding hour and a quarter. The car was parked on a public street, with its engine still warm. Neither its owner nor his car keys were in police custody; the police did not even know who the owner was. Finally, the police had no assurance that the holdup man had ceased his illegal activity for the night. In light of all these facts, which establish the existence of both probable cause and "exigent circumstances," it would have been unreasonable for the police *not* to have searched relator's automobile immediately. Such a search could not conceivably have violated relator's Fourth and Fourteenth Amendment rights.

Relator relies primarily on *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), but *Coolidge* is surely inapposite. Crucial to the holding in *Coolidge* was the absence of exigent circumstances, 403 U.S. at 465, 91 S.Ct. 2022, that are clearly present in the instant case. Relator also argues the relevance of *Haefeli v. Chernoff*, 394 F.Supp. 1079 (D.Mass.1975), where a warrantless search of a parked car was held improper because the driver of the car and his companion were already in custody, could not approach the car, and the police had no reason to believe that the pair had confederates who could approach the car. The instant case is quite different. Neither of the persons who had been seen in the car were in custody; their identities were unknown; and the police undertook the warrantless search precisely to find out who they were. The *Haefeli* case is clearly distinguishable as well.

## B. The Apartment Search

■ In his first challenge to the validity of the search of Ms. Lewis's apartment, relator claims that the search warrant[6] for the apartment failed to satisfy the two-pronged test for probable cause announced

---

4. The continuing vitality of *Chambers* has been reaffirmed by four members of the Supreme Court majority in *Cardwell v. Lewis*, 417 U.S. 583, 594, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). I have carefully examined the rationale of the four dissenting Justices in that case as well, and I find in their focus on police custody of the defendant *and* the keys to his car, 417 U.S. at 599, 94 S.Ct. 2464, nothing that is inconsistent with my analysis here.

5. Set forth in *Chambers*, these requirements were underlined in *Coolidge v. New Hampshire, infra.* See *United States ex rel. Johnson*

*v. Johnson*, 340 F.Supp. 1368, 1372 (E.D.Pa. 1972).

6. Prior to the hearing in this Court, the Chester police searched their files for the warrants in question, but could not find them. No transcript of the proceedings before the magistrate who issued the warrants was available either. Accordingly, my rulings on this issue are based primarily on the complaints for search warrants presented to the issuing magistrate, and on the testimony introduced at the hearing on the habeas corpus petition.

in *Aguilar v. Texas*, 378 U.S. 104, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The citation is singularly unhelpful. *Aguilar* does set forth a two-pronged test, but that test concerns the sufficiency of an affidavit based upon information secured from an anonymous informant. The instant case simply does not involve an informant. Moreover, there was ample reason—"probable cause"—for the magistrate to issue the warrant complained of. While the complaint for the warrant said only that identification belonging to Ms. Lewis had been found in the holdup car, the Chester police explained the entire robbery investigation to the magistrate who issued the warrant.

■ Relator's second objection to the apartment search is similarly without merit. He emphasizes the discrepancy between the items found in the apartment, an automatic pistol and green work clothes, and the items described in the search warrant, a revolver and blue work clothes. Though the discrepancy undoubtedly does exist, it has no constitutional significance. The descriptions in the search warrant were based on observations made by the robbery victims while they were being threatened at gunpoint by the holdup man. That those observations were not scientifically precise is no reason to void the warrant or suppress the evidence seized under its authority.

In the light of my findings about the search of relator's automobile, relator's final challenge to the search of Ms. Lewis' apartment must also fail. Relator claims that the apartment search was the fruit of the prior, illegal automobile search. I have already found that the automobile search did not violate relator's Fourth and Fourteenth Amendment rights. It could not, therefore, have tainted the subsequent search of Ms. Lewis's apartment.

II. The Lineup Issue

Relator's second claim for habeas corpus relief rests on two related arguments: he alleges (1) that his in-court identification by witnesses who were present at the suppressed lineup was not based on a source independent of the lineup, and (2) that the lineup itself was so prejudicial that it violated his due process rights in a manner distinct from his right to counsel claim. Neither argument is meritorious.

Under the rule of *United States v. Wade*, 388 U.S. 218, 241–42, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), even where the in-court identification of a criminal defendant has been preceded by an unlawful lineup, the in-court identification will not be suppressed if the prosecution can show that it is based on a source that is independent of the tainted lineup. See also *Gilbert v. California*, 388 U.S. 263, 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

■ Prior to relator's original trial, the state's identification witnesses were questioned closely by counsel and the court about whether their identifications of relator were influenced by, or independent of, the suppressed lineup. Under oath, each of those witnesses testified that his identification of the relator was not influenced by the lineup. The trial judge, the trier of fact at the suppression hearing, found their testimony credible and held that their identifications of relator were admissible at trial. I have examined with care the state court record, and I find no error in this ruling. Relator's first lineup-related argument must therefore be rejected.

■ In his second contention, relator relies on *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), which held that a confrontation between a defendant and a victim of crime could be "so unnecessarily suggestive and conducive to irreparable mistaken identification" that it could deny the defendant due process of law. The Court in *Stovall*, however, cautioned that a claimed violation of due process during such a confrontation depended on "the totality of circumstances surrounding it." Id. at 302, 87 S.Ct. at 1972. I have considered the totality of circumstances surrounding the lineup challenged here, and find no violation of due process. The lineup was composed entirely of black males; some were older than relator, others younger; all were within a per-

missible range of relator's height and weight. The state is required to arrange a lineup that is not "unnecessarily suggestive," *Stovall v. Denno, supra* at 302, 87 S.Ct. at 1972; it is not required to people that lineup with individuals who could pass as identical twins of the defendant. The state met its obligation in the instant case. Moreover, I fail to see how relator can, with any claim to logical consistency, argue that the lineup violated the *Stovall* rule. Two witnesses to another robbery, who attended the lineup, were *not* able to identify relator as the man who robbed them. See transcript of March 25, 1969 proceedings. The lineup thus could not have been "conducive to irreparable mistaken identification." *Stovall v. Denno, supra* at 302, 87 S.Ct. 1967.

■ Relying on the March 25, 1969 hearing I have just referred to, relator raises one final challenge to the lineup. At that hearing, prior to another robbery trial where relator was the defendant, the trial judge suppressed the identification testimony of two witnesses who attended the same lineup that is attacked here. According to relator, this ruling shows that the lineup itself was tainted and that the identification testimony in the instant case should have been suppressed as well. An examination of the March 25, 1969 transcript, however, reveals the weakness of this argument. The case involved the robbery of a hoagie shop more than two weeks before the gas station robberies in this case. As I have pointed out above, the two robbery witnesses, who were *not* witnesses in the instant case, were unable to identify relator at the lineup. They did so only after police had shown them, in one instance, a photograph of relator and, in the other, clothing allegedly worn by relator during the hoagie shop robbery.

No such prejudicial police conduct occurred in the instant case. Though one witness identified a photograph of relator prior to the lineup, he was shown the photo during the investigatory phase of the prose-

cution, when police were still seeking to ascertain the identity of the robber, and the photo itself was one of a series of 15 or 20 offered by police for the witness's inspection. This entirely proper investigatory procedure cannot be the basis for a finding, by this Court, of a denial of due process. In all likelihood, the trial judge at the March 25, 1969 properly suppressed the challenged identification testimony. On its facts,[7] however, that ruling is totally distinguishable from the decision of the trial judge in the instant case. Relator's second set of lineup-related arguments must also fail.

### III. The Right to Counsel Issue

Relator's third and final claim for habeas corpus relief rests upon alleged denials of his right to counsel and his right to confront witnesses at his original trial for the gas station robberies. He argues, in essence, that his decision that his counsel not take an active part in the trial—a decision that his counsel clearly opposed—did not constitute a knowing and intelligent waiver of his right to the assistance of counsel.

■ After listening to all of the evidence presented at the habeas corpus hearing and after carefully considering the memoranda submitted by the parties, I have concluded that the only issue with any possible colorable merit that relator has raised in this regard is whether his counsel's failure to give a summation to the jury deprived him of the effective assistance of counsel. That issue itself must be placed in some kind of perspective. When a defendant who is as experienced and knowledgeable about the criminal process as relator is deliberately decides to play the role of a lawyer and repudiates the advice of his own counsel and of the court, he does so at his peril, and at his peril alone. For otherwise he would convert the legal process into a perpetual game where the court and the system become the joker. One who repudiates sound legal advice as relator did here should not be permitted to feign ignorance, or plead

---

7. At the March 25, 1969 hearing, defense counsel conceded that the identification issue in the instant case was far less confusing than in the hoagie shop case.

that he was uninformed of his rights, when he had been advised specifically that he should not decline his own lawyer's recommendation. The criminal process is not a three-ring circus where defendants can prance from one ring to another, putting on different and endless performances in the circle or circles of his choice. A criminal trial is a serious matter wherein a defendant's rights must be protected, but there is also a societal right, implicit in the Constitution, which demands that the criminal justice system function with some rationality and enjoy some finality.

■ The record reveals that the relator, over the objection of his attorney, initially decided that there would be no defense in his behalf, and that his counsel would not even cross-examine the prosecution's witnesses. Transcript of January 27, 1969, at 57–61. While it is true that the trial judge volunteered a statement that relator's counsel would make a summation to the jury on his behalf, id. at 58, when the time came for that summation, relator's counsel felt that he had nothing to say to the jury and that he should waive his opening and closing statements to the jury, and he so informed relator. Id. at 119–20. Relator agreed to the waiver, and the following colloquy ensued:

> THE COURT: Is that what you want him to do, Mr. Davis?
>
> DEFENDANT DAVIS: Yes sir.
>
> MR. CAREY: You don't want him to say anything at all to this jury on your behalf?
>
> DEFENDANT DAVIS: There is nothing to say. I don't feel that there is anything to say.

Id. at 120.

If the robbery trial in the instant matter had been relator's first and only contact with the criminal justice system, or if relator were a person of less than average

intelligence, it might be possible to argue that his waiver of his counsel's active participation in the trial and his later waiver of his counsel's speeches to the jury were not knowing and intelligent. It is not possible to make that argument in the instant case, however. By relator's own account, when he was in school his performance as a student was adequate or satisfactory. Moreover, the robbery trial at issue here was not relator's initial encounter with the law. Relator's contacts with the criminal justice system began in 1955, 13 years prior to the robberies of October 23, 1968, and continued with unfortunate frequency thereafter. On several of those occasions, he was represented by a lawyer. Some of these cases went to trial, and on at least one occasion relator's attorney made speeches to the jury. See generally Transcript of Habeas Corpus Hearing, April 23, 1975, at 2–47 to 2–62. In light of this record, I cannot accept the argument that relator, a person of at least average intelligence who had had abundant experience with the criminal justice system, did not know what he was doing when he waived his right to have his counsel cross-examine adverse witnesses and make a closing speech to the jury. Both waivers were knowing and intelligent, and relator's final claim for habeas corpus relief is therefore without merit.

## CONCLUSION

Having examined with care the state court record and the exhibits offered at the hearing on relator's petition, and having heard all of the testimony presented at that hearing, I have concluded that no violation of relator's federal constitutional rights occurred during the proceedings challenged herein. Accordingly, relator's petition for a writ of habeas corpus must be, and is, denied. An appropriate order will be entered.[8]

8. The Court extends its thanks to Messrs. Alan B. Vlcek and Thomas D. Panebianco of the Indigent Prisoner Litigation Program of the University of Pennsylvania Law School, who under the supervision of professors from their law school represented relator with vigor and competence. Their advocacy and analysis were of the highest quality, and strengthened, rather than diluted, the criminal justice system as it functioned in these habeas corpus proceedings.

This opinion shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.