## No. 27084

### The People of the State of Colorado v. Michael Corbett

(547 P.2d 1264)

Decided March 22, 1976.

Robert L. Russel, District Attorney, Ronald T. Rowan, Chief Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Gene Beville, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

This is an interlocutory appeal by the People from a ruling suppressing certain statements made by the defendant Corbett to the police on two separate occasions. The district court determined that the police did not have reasonable suspicion to detain the defendant for questioning on the first occasion and therefore suppressed his statements made at that time. The court then ruled that statements made by the defendant at a later time were sufficiently tainted by the unlawful detention to be also inadmissible. We affirm.

The testimony offered by the People at the suppression hearing was minimal. Detective Watson of the El Paso sheriff's office testified that he questioned the defendant twice before his arrest, once around 12:15 a.m. and then again three or four hours later, concerning his involvement in a murder on the day before. He stated that he, in conjunction with a colonel in the military police and another detective, first questioned the defendant, a soldier, at the military police station at Fort Carson. He had been detained by the military police pursuant to a pick up order from the sheriff's office. The detective did not indicate the basis for this pick up order, except to say that there was a report from the Colorado Springs police department of an earlier shooting incident between the defendant and the victim. Detective Watson then stated that defendant, after being given *Miranda* warnings, admitted that he owned a 12-gauge shotgun and that his companion owned a 20-gauge shotgun. The officers knew these were the same type of weapons used at the scene of the murder. Detective Watson testified that he remembered telling the defendant that he would run a ballistics test on the guns because the evidence showed the defendant was one of the "trigger men." He also testified that he terminated the questioning at this point and noted in his report that the interview would continue at a later time.

Detective Watson explained that about four hours later, defendant "voluntarily" came to the sheriff's office accompanied by MPs. After being readvised of his rights, he made statements similar to the ones he had made before. The record does not disclose whether defendant had been detained by the MPs in the interim.

I.

■ On the basis of the foregoing facts and in the absence of a contrary holding by the district court, we presume that the military police acted at the direction and request of the civilian police officers in detaining the defendant and that the civilian police actively conducted the ques-

tioning. The military police must therefore be treated as but an arm of the civilian police for the purposes of determining the admissibility of defendant's statements in our courts. *Compare, Lustig v. United States*, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); *Byars v. United States*, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927), in which the Court applied federal standards to determine the admissibility of evidence obtained by state officers who were actively assisted and directed by federal officers.

The People concede that no probable cause existed to arrest the defendant when he was detained at the military police station. However, they argue that the detention was justified under *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971), as a reasonable investigative detention because the military police and the sheriff's office had a reasonable suspicion on the basis of the Colorado Springs police report to believe that defendant was involved in a murder. We disagree.

■ Assuming, without deciding, that defendant was not under arrest,[1] we find his detention nevertheless unreasonable. We have held that a temporary police detention in the nature of "field investigation" can be justified by less than probable cause for arrest (1) if the police have a reasonable suspicion that the individual has or is about to commit a crime, (2) if the purpose of the detention is reasonable, and (3) if the character of the detention is reasonable in light of its purpose. *People v. Stevens*, 183 Colo. 399, 517 P.2d 1336 (1973); *Stone v. People, supra*. In *Stone*, we held that an officer could stop an individual on the street for the purpose of determining his place of residence on the basis of an informant's tip that the individual was using and selling narcotics. In *Stevens*, we extended the *Stone* stop to cover a field investigation that included some questioning where a visitor was seen leaving a prison restroom just before marijuana was found there and where the prison authorities detained the accused for a brief period of questioning at a nearby conference room. Our fundamental concern in these cases and their progeny was, and has been whether the extent of the intrusion on an individual's freedom is reasonable when judged by the strength of the officer's suspicions and the exigency for the detention.

■ We are of the view that the actions of the officers here cannot be deemed reasonable under the foregoing guidelines of *Stone* and *Stevens*. The defendant was picked up during the middle of the night and detained for questioning at a military police station concerning a murder that occurred the day before. The lateness of the detention, the removal of the defendant to the station, the extensive questioning, and the remoteness of the detention from the time and place of the suspected crime are factors

---

[1] The trial court never made a finding as to whether defendant was under arrest.

requiring a high degree of justification. However, the Colorado Springs police report, without a showing as to its predicates, cannot reasonably afford a suspicion sufficient to justify this detention. The "fellow officer" rule cannot be relied on here because the right of one officer to act on information relayed to him by a fellow officer is premised upon the latter's assumed possession of trustworthy information and facts. *Such information was never presented at this suppression hearing. See Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *People v. Ware*, 174 Colo. 419, 484 P.2d 103 (1971). Furthermore, although a pick up order by itself might furnish cause to briefly stop an individual on the street to establish his identity, *People v. Gurule*, 175 Colo. 512, 488 P.2d 889 (1971), it cannot be a reasonable basis for this type of detention.

■ Because defendant's statements at the military police station were derived so immediately after this unlawful detention, and in fact, were the object of the detention, they were properly suppressed by the trial court as fruits of the unwarranted intrusion. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Allen*, 185 Colo. 190, 523 P.2d 131 (1974); *People v. Moreno*, 176 Colo. 488, 491 P.2d 575 (1971). Under such circumstances, the statements were not purged of the taint of the illegality by the giving of *Miranda* warnings. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *People v. Bates,* 190 Colo. 291, 546 P.2d 491.

## II.

■ The People also argue that the statements of the defendant made a few hours later at the police station were not the fruits of the first unlawful detention because they were given after the defendant voluntarily came to the police station and after he was again advised of his *Miranda* rights. We cannot agree.

*Miranda* warnings cannot serve to dispel the taint of the unlawful detention in this case. The United States Supreme Court in *Brown, supra,* cautioned that while the warnings may be an important factor in determining whether statements are obtained by exploitation of an illegal arrest, they cannot be dispositive. The court reasoned that *Miranda* warnings, designed to effectuate fifth amendment rights, may not alone sufficiently deter a fourth amendment violation, nor manifest an act of free will sufficient to break the casual chain between the illegality and subsequent statements. The *Brown* court stated:

"[E]ven if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statements meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' . . ."

The United States Supreme Court in *Brown* concluded that other factors, such as, the lapse of time, the intervening events, and the flagrancy of official misconduct, must also be considered in determining whether the original taint of the illegal arrest had been removed. We believe these same considerations apply when determining the fruits of an unlawful detention.

In reviewing these factors, we conclude that defendant's later statements were tainted by his earlier unlawful detention. Though defendant might be said to have "voluntarily" come to the sheriff's office in the sense that he agreed to make the trip, his decision cannot be regarded as the product of his own free will and reflection, independent of his earlier detention. His admission that he owned a gun of the same type as used in the murder, together with the detective's taunt that he was believed to be the "trigger man," could well have pressured him to give the later statements and to submit to further questioning. The record does not show the presence of any significant intervening events between his first detention and these subsequent statements to allow him pause to appraise his situation. In fact, his accompaniment to the sheriff's office by the military police and the lateness of the hour belie such intervening events. Moreover, the purpose of the initial "dragnet," which the trial court labelled the police action in this case, was for the ultimate purpose of inducing such statements. Such facts adequately support the trial court's finding that the later statements were tainted by the unlawful detention so as to be inadmissible.

Ruling affirmed.