No. 27837

**The People of the State of Colorado v. Carlos O. D. Henry**

(578 P.2d 1041)

Decided May 1, 1978.                    Rehearing denied June 5, 1978.

310

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, David Schwartz, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, James E. Scarboro, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The appellant, Carlos O. D. Henry, was convicted by a jury of aggravated robbery, conspiracy to commit aggravated robbery, and felony-murder. On appeal, the appellant contends that the trial court erred in denying his motions to suppress the introduction of certain evidence and asserts that numerous errors occurred which require a new trial. We affirm.

## I.
### Facts

A 7-11 Store in Aurora, Colorado, was robbed at approximately 3:30 a.m. on August 24, 1975. The store attendant on duty was killed during the robbery by a shotgun blast fired at close range into his back. Other than the participants, there were no eyewitnesses to the crimes.

The police investigation of the criminal episode led to the arrest of Daniel F. Barnes in Cheyenne, Wyoming, on August 30, 1975. Barnes initially denied involvement in the incident, but later admitted his participation and made a statement. He informed the police that the other individuals responsible for the crimes were "Carlos," later identified as the appellant, and the appellant's common-law wife, later identified as Yvonne Brown. According to Barnes, who later pled guilty to aggravated robbery, Brown first went into the store to look things over, and the appellant, thereafter, entered the store alone, robbed it, and killed the attendant.

On August 31, 1975, the Aurora police made efforts to locate the appellant. The police eventually obtained what was believed to be the appellant's current address. Further investigation, however, revealed that the appellant had recently moved to an apartment across the street from his prior address. At approximately 9:30 p.m., seven police officers initiated surveillance of the appellant's apartment building. During the next ninety minutes, the police kept the building under surveillance, so that no one could leave unnoticed. The lights in the appellant's apartment were observed to be on, and the shower was running. At 11:00 p.m., four policemen, including two officers armed with shotguns, knocked at the appellant's door. When a voice asked who was there, an officer answered by giving the name of a known acquaintance of the appellant. Yvonne Brown opened the door, and both the appellant and Brown were arrested.

During questioning conducted on the following day, at approximately noon, the appellant waived his constitutional rights and made a statement after having been given the warnings set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He admitted having been at a party the evening of the robbery and having met a person named "Danny," identified by a photograph as Barnes. However, he denied involvement in the robbery-murder. At the time of questioning, at the request of a police officer, the appellant provided the police with a hair sample. Subsequent analysis established that the appellant's hair sample had the same characteristics on comparison as a hair found in a mask

recovered from the 7-11 Store after the robbery.

## II.
### Legality of the Warrantless Arrest

The appellant's initial contention is that his warrantless arrest was made in violation of Colorado's arrest statute, section 16-3-102, C.R.S. 1973:[1]

"*16-3-102. Arrest by peace officer.*

(1) A peace officer may arrest a person when:

"(a) He has a warrant commanding that such person be arrested; or

"(b) Any crime has been or is being committed by such person in his presence; or

"(c) He has probable cause to believe that an offense was committed and has probable cause to believe that the offense was committed by the person to be arrested. An arrest warrant should be obtained when practicable."

It is well established that only probable cause and exigent circumstances serve to excuse the statutory warrant requirement. *People v. Litsey,* 192 Colo. 19, 555 P.2d 974 (1976); *People v. Hernandez,* 191 Colo. 554, 554 P.2d 291 (1976); *People v. Hoinville,* 191 Colo. 357, 553 P.2d 777 (1976); *People v. Fratus,* 187 Colo. 52, 528 P.2d 392 (1974); *People v. Moreno,* 176 Colo. 488, 491 P.2d 575 (1971). In *People v. Hoinville, supra,* we examined our statutory requirement and declared:

"In order to give practical meaning to what the legislature has written, we must hold sub-section (1)(c) to require that police officers must obtain an arrest warrant whenever possible.

"Such a requirement does not impede effective police action. It does not deprive police officers of the right to make an arrest where exigent circumstances exist. It expresses the view of the American people, as enunciated as early as the discussions of the framers of the Bill of Rights that wherever possible, a neutral magistrate should make probable cause determinations. *See Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

"When immediate police action is essentential to protect the public safety, the warrant preference expressed by section 16-3-102(1)(c) must, and does give way to the public security. *DeLaCruz v. People,* 177 Colo. 46, 492 P.2d 627 (1972). But when an adequate opportunity to obtain an arrest warrant exists, the police, by the terms of section 16-3-102(1)(c), must obtain an arrest warrant." (Footnote omitted.)

Both parties recognize that the *Hoinville* case states the law in Colorado, but disagree as to the existence of probable cause and exigent circumstances. A review of the record clearly establishes that probable cause

---

[1] Since amended by Colo. Sess. Laws 1977, ch. 210, 16-3-102 at 850.

existed to believe that a crime had been committed by the appellant prior to his arrest. The legality of the warrantless arrest, therefore, depends upon the existence of exigent circumstances.

■ The prosecution contends that exigent circumstances are established by the character of the investigation, the time of the arrest, the violent nature of the crimes, and the potential danger to the public. While all of these factors are relevant in the determination of exigent circumstances, no factor alone is conclusive, and the totality of the circumstances must be examined. *See People v. Litsey, supra.*

■ When the circumstances surrounding the appellant's warrantless arrest are considered, it is clear that exigent circumstances did not exist. Prior to the arrest, for one and one-half hours, seven police officers kept the appellant's apartment under surveillance. No explanation for the police failure to have one of the officers seek to obtain an arrest warrant during the course of the surveillance has been offered.

## III.

### Admissibility of the Appellant's Statement and Hair Sample

■ The remedy for the violation of our arrest warrant requirement is the exclusion of evidence seized which is tainted as fruit of the poisonous tree. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Hoinville, supra; People v. Moreno, supra.* Evidence obtained subsequent to an illegal arrest need not be suppressed, however, if the taint of the official misconduct has been purged. *Brown v. Illinois, supra.*

The United States Supreme Court considered the factors which might serve to purge the taint of an illegal arrest in *Brown v. Illinois, supra.* The Supreme Court in *Brown* rejected the argument that the *Miranda* warning is sufficient to purge the taint and permit the admission of a confession:

"The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation or an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see Johnson v. Louisiana, 406 US 356, 365, 32 L Ed 2d 152, 92 S Ct 1620 (1972), and, particularly, the purpose and flagrancy of the official misconduct, are all relevant. See Wong Sun v. United States, 371 US at 491, 9 L Ed 2d 441, 83 S Ct 407. The voluntariness of the statement is a threshold requirement. Cf. 18 USC § 3501 [18 USCS § 3501]. And the burden of showing admissibility rests,

of course, on the prosecution." (Footnotes omitted.)

■ Consideration of the factors enumerated in *Brown* leads us to conclude that the appellant's statement and hair sample were not tainted as fruit of the poisonous tree. First, the appellant's statement was made and the hair was obtained the day after the illegal arrest and not immediately thereafter, as was the case in *Brown*. Secondly, the warrantless arrest was not made for the purpose or with the intent of discovering evidence to establish probable cause. As properly determined by the trial court, the officers possessed probable cause at the time of the warrantless arrest. Finally, the appellant was fully advised of his constitutional rights by the *Miranda* warning and agreed in writing to waive those rights. Similarly, the record establishes that the hair sample was provided voluntarily by the appellant after an officer's request. No evidence suggests that the appellant's statement or hair sample were obtained involuntarily or through coercion.

## IV.
### Evidence of Prior Criminal Transaction

The appellant also challenges the trial court's decision to admit evidence concerning his involvement in a prior criminal transaction. Over the appellant's objection, the victim of an armed robbery testified about a liquor store robbery one month earlier and identified the appellant as a participant. A detective who had questioned the appellant at the time of his earlier arrest also testified. According to the detective, after the appellant was informed that he had been arrested because the victim recognized him, the appellant said, "The only mistake I made was not killing her or I wouldn't be here now."

■ As a general rule, evidence of an accused's other crimes is inadmissible to prove guilt of the crime charged. The reason for this rule is to insure a fair trial and to prevent an accused from being convicted because of his participation in or commission of some other unrelated crime. *People v. Ihme,* 187 Colo. 48, 528 P.2d 380 (1974); *Warford v. People,* 43 Colo. 107, 96 P. 556 (1908). The general rulle is inapplicable, however, when the purpose for which the evidence is introduced is to establish plan, scheme, design, or intent. *People v. Martinez,* 190 Colo. 507, 549 P.2d 758 (1976); *People v. Moen,* 186 Colo. 196, 526 P.2d 654 (1974); *Kennard v. People,* 171 Colo. 194, 465 P.2d 509 (1970); *McCormick, Evidence,* §190 at 448 (2d ed. 1972).

■ After a lengthy hearing, the trial court concluded that the evidence of the prior criminal transaction was sufficiently proximate in time and possessed the required degree of similarity to warrant its admission for the purpose of showing plan, scheme, or design. The trial court also concluded that the detective's testimony concerning the appellant's prior statement was admissible to establish the appellant's motive in killing the store attendant. The admissibility of the statement was within the trial

court's discretion and would only be subject to review if an abuse of discretion occurred. *People v. Ihme, supra; Clews v. People,* 151 Colo. 219, 377 P.2d 125 (1962). Careful scrutiny of the record in this case causes us to conclude that the trial court did not abuse its discretion in admitting the challenged evidence. The jury was properly instructed as to the limited purpose of the evidence. *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959). Accordingly, we find no error which requires reversal.

## V.
### *Constitutionality of Colorado's Competency Statute*

■ The appellant's final allegation of error is that Colorado's competency statute, section 13-90-101, C.R.S. 1973, is violative of his right to due process because it impermissibly chilled the exercise of his right to testify on his own behalf. The trial court, after a hearing on the appellant's motion to suppress prior felonies, ruled that the prosecution would be permitted to impeach the appellant with a 1969 felony conviction. The appellant did not take the stand at trial and asserts that his decision was influenced by the court's decision.

In answer to this argument, we adopt the reasoning of the Washington Supreme Court in *State v. Ruzicka,* 89 Wash.2d 217, 570 P.2d 1208 (1977):

"[W]e do not believe allowing the prosecutor to impeach a defendant through the introduction of the defendant's prior convictions for impeachment purposes constitutes an impermissible burden on the defendant's right to testify. Although there are other factors which the jury may consider in weighing the defendant's credibility, such as his demeanor and motivation to lie, this does not lessen the value of the defendant's prior criminal record as a further factor for the jury to consider. Because introduction of a defendant's prior convictions on cross-examination for impeachment purposes is thought to serve a useful purpose in helping the jury to weight all of the evidence before it, RCW 10.52.030 cannot be construed as being a penalty imposed on a defendant's right to testify on his own behalf.

"Not all burdens placed on the defendant's choice of whether to testify constitute impermissible penalties on his exercising his constitutional right to testify on his own behalf. For example, the police may obtain a statement from the defendant which violates his *Miranda* rights. Although his statement cannot be introduced in the prosecutor's case-in-chief, if the defendant chooses to testify the prosecutor can use the defendant's statement for impeachment purposes. See *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Riddell v. Rhay,* 79 Wash.2d 248, 484 P.2d 907 (1971). In deciding whether to testify, the defendant must weigh the pros and cons of perhaps having his previously inadmissible statement heard by the jury." (Footnotes omitted.)

The appellant's right to the due process of law has not been violated in this case.

Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE CARRIGAN do not participate.