593 P.2d 365 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Toby Lee ROMERO, Defendant-Appellant.
No. 77-015.
Colorado Court of Appeals, Div. II.
December 28, 1978.
Rehearing Denied January 25, 1979.
Certiorari Denied April 9, 1979.
*367 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Karen Hoffman Seymour, Asst. Atty. Gen., Denver, for plaintiff-appellee.
John A. Purvis, Acting State Public Defender, Boulder, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.
ENOCH, Judge.
Defendant appeals from a judgment entered on a jury verdict finding him guilty of first degree murder. We affirm.
On February 3, 1976, Sally Salgado was found murdered in her apartment, the victim of numerous knife wounds. Her sister, Rita Gonzales, told police that she and Sally had met defendant the night before at a bar. When the bar closed defendant accompanied the women to Sally's apartment where Rita left the two together. On the morning of February 3, Rita could describe defendant but could not remember his full name. Police showed Rita numerous pictures, but none was of defendant.
It was not until the morning of February 4, 1976, that police showed Rita a set of pictures that included one of defendant. As soon as Rita made a positive identification, the police obtained two addresses for defendant, and without obtaining an arrest *368 warrant, they went to both addresses. Finding defendant at the second address, they placed him under arrest and took him to the police station where they searched him. Armed with a search warrant, they later searched defendant's house and seized several knives.

I.
Defendant first argues that he was arrested in violation of § 16-3-102(1)(c), C.R. S.1973, then in effect, and therefore evidence seized should have been suppressed at trial as fruits of the illegal arrest. We disagree.
At the time of defendant's arrest, § 16-3-102(1)(c), C.R.S.1973, required that police officers obtain an arrest warrant "where practicable." Under the statute, a warrantless arrest was justified by a showing of probable cause plus the existence of exigent circumstances mandating immediate police action to protect public safety. People v. Hoinville, Colo., 553 P.2d 777 (1976); People v. Moreno, 176 Colo. 488, 491 P.2d 575 (1971). Defendant argues there were no exigent circumstances excusing the warrant requirement.
Whether exigent circumstances exist is a matter for the trial court whose determination will not be disturbed on review if there is evidence in the record to support its findings. See People v. Litsey, Colo., 555 P.2d 974 (1976); People v. Harris, Colo., 552 P.2d 10 (1976); People v. Hoinville, supra. Here there is ample evidence in the record to support the trial court's determination that exigent circumstances existed. The police officers making this arrest knew that a brutal homicide had been committed and that the perpetrator was still at large and probably dangerous. Rita Gonzales had expressed fear for her own safety. She had given defendant her telephone number, and he knew the kind of car she drove and the neighborhood where she lived. Rita also knew that defendant carried a knife. Detective Diaz testified that he remembered the defendant from an arrest three years earlier involving the same kind of homicide. Diaz was afraid that defendant, familiar with police procedures in a homicide case, would attempt to destroy any evidence that linked him to the crime, knowing that valuable information could be gathered from fingernail scrapings, clothing, and weapons.
The fact that more than 24 hours elapsed between the discovery of the body and the arrest of defendant did not dissipate the exigency in this case. Before Rita positively identified defendant's picture, police were pursuing thin leads based only on Rita's description and her information that defendant called himself Toby. Throughout that period the police knew a dangerous man might be fleeing or destroying evidence. When Rita identified defendant's photograph, the police were aware that obtaining an arrest warrant could take up to several hours, time enough for defendant to escape, to finish destroying evidence, or to take action against Rita Gonzales. This case is distinguishable from those in which there is little or no likelihood that the evidence will be disturbed, see, e. g., People v. Hampton, Colo., 587 P.2d 275 (1978), or in which police have virtually abandoned their initial efforts and then resumed the task without a warrant, see, e. g., Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).
Thus the trial court did not err in concluding that at the time probable cause to arrest defendant arose, the police officers were confronted with circumstances which justified an arrest without a warrant. See People v. Litsey, supra. See also People v. Clark, 37 Colo.App. 188, 547 P.2d 267 (1976). The evidence obtained pursuant to the arrest and the later search warrant were therefore properly admitted at trial.

II.
Defendant next argues that it was error for the trial court to deny his motion for a continuance or to sequester the jury panel during the jury selection. In support of his allegation of error, defendant points to several newspaper articles and a television newscast appearing just before the voir *369 dire, which mentioned defendant's prior acquittal of a charge of homicide. Defendant urges that because many prospective jurors heard the inflammatory and prejudicial statements, he was deprived of a fair trial. We disagree.
The decision to grant or deny a continuance lies in the sound discretion of the trial court and will not be reversed unless defendant can show actual adverse effect upon the jury or massive, pervasive, and prejudicial publicity. People v. Mulligan, Colo., 568 P.2d 449 (1977); People v. McCrary, 190 Colo. 538, 549 P.2d 1320 (1976). Here defendant has shown neither. The trial court carefully and repeatedly admonished prospective jurors not to listen to or read news reports. Those prospective jurors who had heard the information were subjected to thorough questioning and were dismissed for cause if the court determined the information might affect their decision. In addition, the character of the pretrial publicity was not of the kind condemned in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Because it is "sufficient if jurors can lay aside the information and opinions they have received through pretrial publicity," People v. McCrary, supra, and because the record shows the trial court conducted voir dire so as to insure an impartial panel of jurors, it was not error for the trial court to deny defendant's motion for continuance or for sequestration of prospective jurors.

III.
Defendant also argues that the trial court erred in denying his challenges for cause as to two jurors who had heard the newscast which reported that defendant had been previously acquitted of a similar murder. We do not agree.
No juror can be dismissed for cause if the trial court is satisfied the juror will render an impartial verdict. Section 16-10-103(1)(j), C.R.S.1973; Crim.P. 24(b)(I)(X). The trial court is to exercise wise and sound discretion in ruling on a challenge for cause.
"The test is whether the nature, and strength of the opinion formed or of the information learned from pretrial publicity are such as necessarily raise the presumption of partiality or of the inability of the potential juror to block out the information from his consideration." People v. McCrary, supra.

The decision of the trial court will not be disturbed on review in the absence of a showing of abuse of discretion. Leick v. People, 136 Colo. 535, 322 P.2d 674, cert. denied, 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958).
The record on voir dire shows that the trial court thoroughly examined the two jurors as to the effect of the newscast before deciding they could lay aside the information they had learned and render an impartial, unprejudiced decision. Therefore there was no abuse of discretion in the trial court's denial of defendant's challenges for cause.

IV.
Defendant next asserts that the trial court erred in permitting testimony by a serologist as to the statistical frequency of the victim's blood characteristics. We disagree.
The prosecution presented a forensic chemist who was qualified as an expert witness in the field of forensic serology. She testified that she had analyzed blood samples taken from the victim and from defendant's clothing and pillowcase. In her opinion the combined characteristics of the victim's blood type would occur in the general population with a frequency of 3.5%. Her opinion was based on her analysis of the blood samples, her use of various published tables and charts on blood-grouping frequencies obtained from pharmaceutical supply companies, and her use of information gathered in her own research from other forensic laboratories.
Where proffered evidence is trustworthy and necessity compels its admission, courts will admit the testimony as an exception to the hearsay rule. Good v. A. B. *370 Chance Co., Colo.App., 565 P.2d 217 (1977). Here the expert witness relied in part on tables produced by a pharmaceutical company for use in the medical profession, and she testified that the tables are regularly relied upon by experts in the medical profession in their practice. In addition, the tables were compiled from persons too numerous to testify directly at trial. The witness was qualified as an expert and therefore was competent to judge for herself the reliability of her research and the information on which she based her opinion. United States v. Williams, 447 F.2d 1285 (5th Cir. 1971), cert. denied, 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972). Any question as to the validity of the opinion or its basis could be brought out on cross-examination, and here the witness was extensively questioned. People v. Gillespie, 24 Ill.App.3d 567, 321 N.E.2d 398 (1974). Therefore it was not error for the trial court to allow the testimony of this witness. United States v. Musgrave, 483 F.2d 327 (5th Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 35 L.Ed.2d 315 (1973). Cf. Lloyd A. Fry Roofing Co. v. State, Colo., 553 P.2d 800 (1976).

V.
Defendant next assigns error to the trial court's refusal to admit into evidence a prior statement by the victim that in June 1975 her husband had attacked her with a kitchen knife. We find no error.
Defendant urges two grounds for admission of this hearsay evidence. We do not consider the first ground, the state of mind exception, because defendant failed to raise it at trial or in the motion for new trial. The trial court was unable to rule on the admissibility of the evidence on that ground, cf. Russell v. First American Mortgage Co., Colo.App., 565 P.2d 972 (1977), and we do not find plain error in excluding the evidence on that basis. See People v. Pearson, Colo., 546 P.2d 1259 (1976).
We also hold that the statement is not admissible to show ill will, malice, or motive on the part of the victim's husband. Defendant would offer the evidence to show that someone else had an opportunity or motive to commit the crime for which he is being tried. Such evidence is not admissible, however, in the absence of proof that the other person committed an act that directly connects him with the crime at issue. People v. Mulligan, supra. Here the husband was not living with the victim at the time, and there was no evidence to link him with the crime. Therefore it was proper for the trial court to exclude the evidence.

VI.
We find no merit in defendant's final argument that the trial court erred in refusing to instruct the jury on second degree murder after defendant himself, contrary to his attorney's advice, insisted that the instruction not be given.
Although we agree that normally tactical decisions are left to the attorney, see ABA, Standards Relating to the Defense Function § 5.2(b) at 238-40 (1971), we are also mindful of the defendant's right to represent himself. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Colo.Const. Art. II, § 16. Where there is an irreconcilable dispute between the attorney and the defendant, the court may, if practicable, appoint a new attorney for the defendant. Or the court may interrogate the defendant directly to determine if he fully understands the consequences of disregarding his attorney's advice. See United States ex rel. Davis v. Jennings, 414 F.Supp. 544 (E.D.Pa.1976).
Here defendant was adamant that the jury be instructed only on first degree murder and not also on the lesser included offense. At that stage of the trial it was impractical to appoint a new attorney. The court carefully examined defendant to ascertain whether his decision was knowing and voluntary, and it warned defendant of the consequences of proceeding only on a first degree murder instruction. Defendant was not unknowledgeable about criminal proceedings, and there is no evidence that he was of less than average intelligence. *371 Where, as here, the trial court had determined that defendant has made a voluntary waiver of an instruction on a lesser included offense, and defendant is fully apprised of the consequences of his action, he cannot later assert that his waiver of counsel on that issue was unknowing or that the trial court erred in not giving the instruction over his objection. United States ex rel. Davis v. Jennings, supra.
Judgment affirmed.
KELLY and STERNBERG, JJ., concur.