The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Roy Elmer MYRICK, Defendant-Appellant.

No. 79SA400.

Supreme Court of Colorado.

Nov. 16, 1981.

Rehearing Denied Dec. 7, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., R. Michael Mullins, Asst. Atty. Gen., Litigation Section, Denver, for plaintiff-appellee.

Stephen C. Rench, Denver, for defendant-appellant.

LEE, Justice.

The defendant, Roy Elmer Myrick, appeals from his conviction for theft by receiving, section 18–4–410(4), C.R.S.1973 (1978 Repl. Vol. 8).[1] We affirm his conviction.

During the summer of 1977, Detective Robert Brown of the Arapahoe County Special Crime Attack Team (S.C.A.T.) was assigned to investigate rumors that sales of stolen merchandise were being transacted at the "Swap and Shop" flea market in Arapahoe County.

During this undercover investigation, Detective Brown made contact with the defendant at the Swap and Shop on July 24, 1977. Detective Brown told the defendant that he had six television sets for sale and asked the defendant if he was interested in buying them. Defendant responded that he would be interested, but also stated that he wanted to be careful because the theft by

---

1. Section 18–4–410(4), C.R.S.1973 (1978 Repl. Vol. 8).

"Theft by receiving. (1) Except as provided in subsection (6) of this section, a person commits theft by receiving when he receives, retains, loans money by pawn or pledge on, or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he intends to deprive the lawful owner permanently of the use or benefit of the thing of value."

. . . .

"(4) Where the value of the thing involved is two hundred dollars or more but less than ten thousand dollars, theft by receiving is a class 4 felony."

receiving statute made receiving stolen goods "just as bad as if you actually went out and stole the items yourself." Arrangements were made to transfer the six television sets the next day. The sale, however, did not take place for reasons not relevant here.

Subsequently, on August 21, 1977, Detective Brown and his partner appeared at the Swap and Shop and offered to sell two television sets to the defendant for $50 each. The defendant inspected the television sets, which were brand new and in original cartons, and offered to pay $80 for the two. Detective Brown accepted the offer, stating that the television sets were "hot" and that he wanted to get rid of them. The sets were not, in fact, stolen goods. The defendant gave Brown $80 to complete the sale. Brown indicated that he could get fifteen to twenty more television sets and defendant stated that he would be willing to buy the additional sets.

Brown and his partner then followed the defendant to the rear of a restaurant in Arapahoe County where the two television sets were put in defendant's panel truck. While at this location, a photograph was secretly taken showing the undercover officers and the defendant. The defendant was then "tailed" to a warehouse in lower downtown Denver, where he unloaded the television sets and took them into the warehouse.

Two days later, on August 23, 1977, a search warrant was issued by an Arapahoe County judge authorizing a search of the warehouse for the television sets. The search warrant provided that the following areas could be searched:

"Warehouse building covering one half block on the west side of Wazee Street extending the entire length of the block between 15th and 16th Streets, Denver, County of Denver, State of Colorado, and the structure across the alley which is attached to the above warehouse by an enclosed catwalk; exclusive of areas not accessible by entry through the second loading dock door South of 16th Street on the East side of the alley."

The search warrant was executed by Arapahoe County S.C.A.T. officers and officers from the Denver Police Department and the two television sets purchased by the defendant on August 21, 1977 were seized at the warehouse.

The defendant was arrested and charged with theft by receiving. Prior to trial, he sought to have the television sets suppressed, claiming that they were obtained in an illegal search. The district court denied this motion. The defendant also challenged the authority of an Arapahoe County judge to issue a search warrant for a structure in Denver County. The trial court held that the issuance of the search warrant was proper and since Denver police officers had been present during the execution of the search warrant, the search and seizure was valid. The defendant also challenged the constitutionality of the theft by receiving statute. The district court found the statute constitutional.

At trial, the Arapahoe County S.C.A.T. officers testified as to the events which led to the arrest of the defendant. The defendant presented several character witnesses. After they had testified, defendant indicated that he wished to testify in his own behalf. At this point, the trial judge, in chambers, advised the defendant that he was not required to testify and that if he did testify he would be subject to "full cross-examination." After a lengthy and thorough explanation of this right, the court recessed for the evening. The next morning the defendant announced that he had decided not to testify. The jury found the defendant guilty of theft by receiving as charged.

The defendant appeals, claiming that the statute under which he was convicted, section 18-4-410(4), C.R.S.1973, is unconstitutional. He also argues that the court erroneously denied his motion to suppress the television sets from evidence. Finally, he claims that the trial court's advice to him concerning his right to testify and the admonition concerning cross-examination to which he would be subjected if he chose to testify were overbroad, thereby impermissi-

bly chilling the exercise of his constitutional right to testify.

## I.

Defendant challenges the constitutionality of the theft by receiving statute. The defendant claims that the statute here involved, which makes it a felony to receive non-stolen property when one believes it to be stolen, furthers no legitimate governmental purpose. Defendant argues that the sole purpose of this statute is to allow law enforcement personnel to approach unsuspecting, innocent citizens and make them criminals by offering them non-stolen property as stolen property. We find this argument to be without merit.

Trafficking in stolen property directly affects public safety and welfare and is an appropriate subject for legislation in the exercise of the police power. *People v. Sequin*, Colo., 609 P.2d 622 (1980). Thus, the legislature may legitimately exercise its police power with the purpose of preventing the theft of personal property and curtailing the distribution of stolen property. When fundamental rights or suspect classifications are not involved, a statute withstands constitutional challenge if it may be demonstrated that it expresses a rational relationship to a legitimate governmental interest. There is no constitutional right to deal in property known or believed to be stolen. *People v. Holloway*, 193 Colo. 450, 568 P.2d 29 (1977). In our view, it is not irrational to believe that preventing the sale of stolen property has a significant impact on the theft of that property. Thus, since there is a legitimate governmental interest in seeking to interrupt the flow of stolen property, it is not irrational for the legislature to attempt to accomplish this by making the receipt of non-stolen property, which is believed to be stolen, a crime. We hold the theft by receiving statute, section 18–4–410, C.R.S.1973, to be constitutional.

## II.

The defendant claims that the search for and seizure of two television sets from the warehouse was illegal, and that therefore the television sets should not have been introduced into evidence at trial. The defendant asserts that the search warrant authorized a blanket search, which is prohibited by the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution. *See People v. Avery*, 173 Colo. 315, 478 P.2d 310 (1970).

The warrant authorized a search of that part of a warehouse building which extended the entire length of one block in lower downtown Denver, and which was accessible from a particular loading dock. It is clear that the officers seeking the warrant and the judge who issued the warrant knew that the warehouse was occupied by at least eight separate businesses with separate addresses. The record is not clear how the warehouse was divided into subunits, or whether separate entrances were provided for each of the tenants. We are thus unable to ascertain whether the determination of the validity of the search warrant is governed by the guidelines set forth in *Avery, supra*. In *Avery*, we stated:

> "The courts are generally agreed that where a structure is divided into several occupancy units, or is a multi-unit dwelling, and there is no common occupancy of the entire structure by all of the tenants, a search warrant which merely describes or identifies the larger multiple-occupancy structure and not the particular subunits to be searched is insufficient to meet the constitutional requirements of particularity of description." 173 Colo. at 319, 478 P.2d at 312.

Assuming, *arguendo*, that the search warrant did authorize an invalid blanket search of a multiple-occupancy structure because it lacked the constitutionally required particularity of description of the place to be searched, the admission into evidence of the television sets was harmless error in view of the overwhelming evidence of the defendant's guilt. We thus do not determine the merits of the defendant's various contentions challenging the validity of the search warrant.

■ The doctrine, which excuses as harmless errors of constitutional dimension, is to be sparingly applied. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967), *reh. den.* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). A constitutional error is harmless only when the case against a defendant is so overwhelming that the constitutional violation was harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *People v. Wieckert*, 191 Colo. 511, 554 P.2d 688 (1976); *People v. Thomas*, 189 Colo. 490, 542 P.2d 387 (1975); *People v. Jones*, 184 Colo. 96, 518 P.2d 819 (1974).

As we view the record, the evidence of defendant's guilt presented by the prosecution in this case is so overwhelming that the admission of the television sets into evidence was harmless beyond a reasonable doubt.

Two Arapahoe County S.C.A.T. detectives testified extensively about their dealings with the defendant leading up to and during the alleged transaction. They testified that the defendant had seen the television sets, had been told they were "hot," had paid $80 for them, and had taken possession of them at a location other than the Swap and Shop. In addition, there were photographs depicting the defendant and the S.C.A.T. officers at the site of the transfer of the television sets. This testimony was in no way controverted. The admission into evidence of the television sets was merely cumulative of the above evidence. Thus, even without the television sets there was other, overwhelming evidence that the defendant had received property believing that it was stolen and intending to permanently deprive the lawful owner of the use of that property. Therefore, the error, if any, committed in admitting the television sets into evidence was harmless.[2]

### III.

During defendant's trial, he indicated his desire to testify in his own behalf. The trial court, in chambers, advised the defendant that he did not have to testify and thereby expose himself to cross-examination by the prosecution. The defendant claims that the tone of the court's advisement was so ominous that it "chilled" his exercise of the right to testify.

■ A defendant has a due process right to testify in his own defense under the United States Constitution, Amendment XIV, and the Colorado Constitution, art. II, sec. 25. *People v. Chavez*, Colo., 621 P.2d 1362 (1981); *see Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3 Cir. 1977); *but see U.S. v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). A defendant's right to testify may not be impermissibly chilled. *People v. Chavez, supra* (Quinn, J. concurring); *see Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Brooks v. Tennessee, supra; Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981); *People v. Henry*, 195 Colo. 309, 578 P.2d 1041 (1978), *appeal dismissed*, 439 U.S. 961, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978).

■ A right may be said to have been "chilled" when there is a "penalty imposed for exercising [that] constitutional privilege." Anything which "cuts down on the privilege by making its assertion costly" may be said to chill that constitutional right. *Griffin v. California, supra*. A defendant must not pay a court-imposed price for the exercise of his constitutional right. *Carter v. Kentucky, supra.* However, " '[n]ot all burdens placed on the defendant's choice of whether to testify constitute

---

**2.** Defendant also claims that the Arapahoe County judge who issued the search warrant for the warehouse in Denver County was not authorized to do so. Since we have already decided that any error in the admission of the television sets found as a result of that warrant was harmless, we need not address the issue of whether or not a county judge may issue a search warrant authorizing the search of a building in another county.

impermissible penalties on his exercising his constitutional right to testify on his behalf.'" *People v. Henry, supra. See also Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In our view, the trial court's advisement and admonition to the defendant did not constitute an impermissible penalty on the exercise of his constitutional right to testify in his own behalf.

 The defendant asserts that the district attorney planned to cross-examine him on the assertion that "the warehouse on Wazee was loaded with stolen property," and that the trial court assented. The defendant also argues that the court gave no indication that it recognized the foundational requirements for admissibility of "other transactions" evidence, and that therefore the defendant had the choice of not testifying, or testifying subject to highly improper cross-examination. The defendant claims this had a "chilling" effect on the exercise of his right to testify and ultimately caused him to refrain from exercising that right.

Our reading of the record does not support the defendant's charges. The court merely advised the defendant that he was not required to testify and that certain matters which might not be admissible as direct evidence might be raised in cross-examination should he decide to take the stand. The record indicates that the trial court was thoroughly aware that the defendant could not be convicted on the basis of evidence of other crimes, and that the scope of cross-examination would be limited by the rules of evidence. The court stated that it would rule on questions of admissibility of evidence when they arose during the course of testimony. Under these circumstances, we cannot presume that the court would allow the defendant to be subjected to improper cross-examination. The defendant's suggestion that the trial judge intended to allow highly improper cross-examination is not supported by the record.[3]

We conclude that the defendant's constitutional right to testify was not impermissibly chilled by the court's advisement and admonition given to the defendant concerning his right to testify.

The judgment is affirmed.

---

**3.** We note that the court's advisement came at the conclusion of a day of trial immediately before adjournment of the court. No immediate or precipitous decision was required of the defendant. The colloquy between the court and the defendant's two trial attorneys indicates that the defendant and his counsel would deliberate over the advisability and consequences of the defendant's testifying in his own behalf. It was at the commencement of the trial on the next day that the defendant announced his election not to testify.