The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Arthur SANTISTEVEN, Defendant-Appellant.

No. 81CA1177.

Colorado Court of Appeals, Div. II.

April 19, 1984.

Rehearing Denied June 7, 1984.

Certiorari Denied Dec. 10, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Convicted by a jury of reckless manslaughter in the stabbing death of Paul Trujillo, defendant, Arthur Santisteven, appeals. We reverse and remand for a new trial.

Defendant, Trujillo, and several friends spent the evening of March 18 and the early morning hours of March 19, 1981, drinking and socializing. As the evening wore on, Trujillo periodically accused the defendant of wanting to make improper advances toward Yvonne Abad, Trujillo's girlfriend. Defendant consistently denied these increasingly belligerent accusations.

Sometime after midnight, defendant began to leave the apartment with his brothers to go home. Trujillo pushed him, and indicated that he wanted the defendant to stay at the party and drink some more. A fight ensued between defendant and Trujillo, and Trujillo was stabbed twice in the chest. Defendant and his brothers then left the party to go home.

At approximately 1:41 a.m., a Denver police detective arrived. He saw Trujillo lying on his back with what appeared to be two stab wounds in the chest. He saw blood in "large quantities about the premises of the apartment." He spoke with Yvonne Abad, who told him that defendant had stabbed Trujillo during a party and then had fled the scene. She described defendant both by name and by clothing. She told the detective that she was very familiar with defendant and his family, since they had all grown up together.

The detective also spoke with Dominic Avellani, who told him that he saw defendant fighting with Trujillo and stabbing him. He further stated that he tried to separate them and was stabbed in the hand by defendant. He indicated that defendant had stabbed Trujillo with a folding knife and said that defendant fled out the rear door into the alley area after the incident. The detective then went to Denver General Hospital, and determined at 2:14 a.m. that Trujillo had been pronounced dead.

After returning to police headquarters, the detective met again with Yvonne Abad, who, at his direction, had been accompanied by a Denver police officer from the time that she had initially talked with him. She told him that she had telephoned defend-

ant's mother, and that the defendant could be found at the home he shared with his mother, specifying the street address. The detective then ordered police officers to contact defendant and bring him to headquarters.

He testified that he considered obtaining an arrest warrant but that, given that particular date and hour of the morning, it would have taken approximately an hour-and-a-half to two hours. He decided not to obtain an arrest warrant.

Two Denver police officers went to defendant's home at approximately 2:40 a.m. on the morning of March 19, 1981, waited for several uniformed officers to arrive as backup, and then went up to the front door. At that time, six policemen surrounded the house. Upon questioning defendant's mother, they ascertained that defendant was at home.

The testimony was conflicting as to whether defendant's mother consented to the officers' entry into her home. The officers testified that she stepped aside for them; Mrs. Santisteven testified that she definitely did not give the officers consent to enter her home, and that they pushed past her and entered without her consent. The trial court found that:

"I believe under the circumstances I cannot say that there was a refusal by Mrs. Santisteven to allow the officers into the house. It would appear to the court that there is, I'd use the term, a passive consent; that is, she did not object to the officers coming into the house, she did not ask that they obtain a warrant, there's no question about that, or that she did not prohibit them from coming in. There was not a denial of entry into her home. I'm sure she was naturally apprehensive, knowing that her son was wanted by the police, knowing that a very serious thing had occurred. I'm sure she wasn't thinking in terms of search warrants or arrest warrants before the entry. The officers came there, and whether she said 'Look for yourself,' or not I really am not making that specific finding, whether that statement was made—

'Come on in, look for yourself'—I'm just making a finding that there was passive consent under all the circumstances of her conduct; that is there was no specific objection to the officers coming in."

This finding, while not as specific as it might have been, amounted to a rejection of the police officers' testimony on the consent issue.

The court further found that there were exigent circumstances present justifying the apprehension of the defendant without a warrant, and that the police were legally justified in their efforts to make an arrest as quickly as possible. In support of its determination that exigent circumstances were present, the court found that the officers knew defendant's name, and that Yvonne Abad had contacted Mrs. Santisteven and advised her that defendant was wanted by the police for murder.

After the officers entered the home, they found defendant, arrested him, and immediately took him to police headquarters. He was then promptly advised of his *Miranda* rights, was interrogated after waiving those rights, and gave a statement. Later that morning a search warrant was obtained to search his residence, and the officers, pursuant to that warrant, searched the premises and recovered a knife.

Defendant filed a motion to suppress his statements made pursuant to his interrogation, alleging that they were the fruits of an illegal arrest. He also filed a motion to suppress the evidence obtained as a result of the search warrant. The trial court denied both motions.

I.

Defendant concedes that there was probable cause for his arrest. He does not appeal the trial court's suppression ruling as to the search of his home, but argues that the trial court erred in denying his motion to suppress his statements made after his arrest, contending that the arrest was illegal. We agree.

The police officers arrested defendant in his home without a warrant. Thus,

the arrest can be justified only on the basis of consent to enter the home or on there being exigent circumstances present. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *McCall v. People*, 623 P.2d 397 (Colo.1981).

### A.

The trial court found that both consent and exigent circumstances existed, but based its ruling primarily on the consent theory. It found that defendant's mother gave "passive consent" to the police officers' entry into her home.

■ The prosecution bears the burden of showing that consent was freely given, and mere acquiescence to a claim of lawful authority is insufficient. *Bumper v. North Carolina*, 391 U.S. 543, 20 L.Ed.2d 797, 88 S.Ct. 1788 (1968). The question of voluntariness of consent is one of fact, and must be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Helm*, 633 P.2d 1071 (Colo.1981).

■ The evidence concerning this issue was sharply conflicting, and the trial court's finding showed that there was no clear and positive evidence in unequivocal words or conduct expressing consent. *See State v. Sherrick*, 98 Ariz. 46, 402 P.2d 1 (1965). As well, the court's finding that Mrs. Santisteven was "naturally apprehensive" indicates that the prosecution failed to meet its burden of showing that her consent was freely and voluntarily given. *People v. Torand*, 622 P.2d 562 (Colo.1981); *People v. Billington*, 191 Colo. 323, 552 P.2d 500 (1976). The trial court's repeated use of the term "passive consent" amounts to a finding of no consent, since passive consent is a nonexistent concept. The trial court's findings showed only, at best, Mrs. Santisteven's failure to object; such failure is an insufficient basis to conclude that the ensuing entry was achieved as a result of her consent. *See Bumper v. North Carolina, supra.*

### B.

■ The court also found that sufficient exigent circumstances existed to justify defendant's warrantless arrest in his home. The existence of exigent circumstances is a factual determination, and a trial court's findings of fact cannot be disturbed on appeal if there is evidence in the record to support them. *People v. Romero*, 42 Colo. App. 20, 593 P.2d 365 (1978).

Here, the trial court made two findings, but only one was supported by the record. There was uncontradicted evidence that the police knew defendant's name and address. However, there was no evidence that defendant's mother had been told by Yvonne Abad that defendant was wanted by the police for murder; rather, the evidence showed only that defendant's mother had been told by Yvonne Abad that defendant had stabbed Trujillo. Consequently, the only exigent circumstance remaining is the knowledge of defendant's name and address by the police. That, in itself, is manifestly inadequate to justify a warrantless arrest.

■ Exigent circumstances can be present when there is a bona fide pursuit of a fleeing suspect. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Here, however, the police had information that the defendant was in his own home, approximately two hours after the stabbing. They had no evidence that he was leaving, and, indeed, the house was surrounded by six uniformed officers to prevent that eventuality.

■ A second type of exigent circumstance involves the risk of immediate destruction of evidence. *U.S. v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *People v. Williams*, 200 Colo. 187, 613 P.2d 879 (Colo.1980). Here, the potential evidence was a knife used in the stabbing, which was not found at the scene. Additionally, the police concluded that defendant might have blood on his clothing. The concern was that this evidence might be destroyed if the time necessary to obtain a warrant elapsed. However, there was no

indication of the imminent destruction of this evidence.

■ The third general category of exigent circumstances justifying a warrantless arrest involves a colorable claim of emergency threatening the life or safety of another. Since Dominic Avellani had been cut on the hand while attempting to stop the fight between defendant and Trujillo, the officers reasoned that, if defendant chose to flee, someone else might be injured. *See Warden v. Hayden, supra; People v. Baca,* 198 Colo. 399, 600 P.2d 770 (1979). This conclusion, however, places an inference upon an inference. The only evidence of "flight" was that defendant left the scene of the stabbing and went home, as he had said he would do before the fight began. His house was surrounded by police. As well, the victim was defendant's cousin, a close friend, and the stabbing occurred during a party where many mutual friends and relatives were present. There was no evidence that defendant might have any weapon other than one knife; he had made no threats, and thus there was insufficient evidence upon which any danger to anyone could be predicated.

■ Noting that the existence of exigent circumstances must be assessed as of the time immediately prior to the search or arrest, *see United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), we conclude that, as a matter of law, the prosecution failed to meet its burden of showing that, "due to an emergency, the compelling need for immediate police action militates against the strict adherence to the warrant requirement." *McCall v. People, supra.*

As well, we call attention to the testimony of defendant's arresting officer, who stated that, had defendant's mother not consented to the search (as he testified she did, contrary to the trial court's findings) "we would have backed off, secured the home, and obtained an arrest warrant." This is a most compelling indication that the exigent circumstances rationale was an afterthought at best.

After defendant was arrested, he was immediately transported to police headquarters, advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and, after interrogation, made a statement.

■ While a confession obtained by the exploitation of an initial unconstitutional arrest is *prima facie* inadmissible, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Lowe,* 200 Colo. 470, 616 P.2d 118 (1980), if the prosecution can establish that the confession was so removed from the illegal arrest that the effect of the initial unconstitutional violation had been sufficiently dispelled by intervening events, the confession may be admissible. *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *People v. Corbett,* 190 Colo. 388, 547 P.2d 1264 (1976). The relevant factors in this determination include the existence of *Miranda* warnings, the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and the purpose and flagrancy of any official misconduct. *Brown v. Illinois, supra; People v. Corbett, supra.*

Here, defendant was arrested sometime after 2:45 a.m. The arresting officer testified that he advised defendant of his *Miranda* rights immediately upon arrest, and that defendant, who appeared to be intoxicated, did not acknowledge that he understood these rights. Defendant was interrogated at police headquarters at 3:17 a.m. after being readvised of his *Miranda* rights, and the interrogating detective testified that defendant was calm, coherent, and not intoxicated. Defendant spoke with no family, friends, or attorneys prior to making his statement.

■ As our Supreme Court so succinctly observed in *McCall v. People, supra,* "the record unequivocally establishes a straight, short, and unbroken line from the defendant's arrest to his confession, and the evidence is not susceptible of alternative inferences in this respect...." Therefore, defendant's statement to the police

should have been suppressed. *Wong Sun v. United States, supra.*

## II.

 Defendant's second assertion is that the trial court erred when, over defendant's objection, it instructed the jury *sua sponte* on the lesser included offenses of reckless manslaughter, § 18–3–104, C.R.S. (1978 Repl.Vol. 8), and criminally negligent homicide, § 18–3–105, C.R.S. (1978 Repl.Vol. 8). Defendant contends that the evidence was insufficient to permit these instructions to be given. Our review of the record leads us to conclude that there was sufficient evidence to form a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense, *see* § 18–1–408(6), C.R.S. (1978 Repl.Vol. 8), and no error occurred. That being the case, we also reject defendant's related argument that the evidence was insufficient to support his conviction of reckless manslaughter.

Defendant's final contention, that his sentence was excessive, is moot.

The judgment of conviction is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

SMITH, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting.

I respectfully dissent.

The majority reverses this conviction because it concludes that the defendant's mother did not consent to the police entering her home. Based on that conclusion, defendant's subsequent arrest is found to be illegal, and statements made after the arrest are found to be inadmissible. The majority also disagrees with the trial court's conclusion that exigent circumstances were present justifying the warrantless arrest. I disagree on both points.

## I.

My first point of departure from the reasoning of the majority lies in its refusal to follow the trial court's conclusion that there was consent to enter the home.

The trial court addressed initially the issue of the mother's voluntary consent after conducting a hearing. It properly reached its conclusion based upon the totality of the circumstances present. *People v. Savage,* 630 P.2d 1070 (Colo.1981). *See also Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Hence, its finding should be binding upon us on review. *People v. Little,* 198 Colo. 244, 598 P.2d 140 (1979); *People v. Ellis,* 189 Colo. 242, 539 P.2d 132 (1975); *Capps v. People,* 162 Colo. 323, 426 P.2d 189 (1967).

At the *in camera* hearing, a detective testified that he spoke with the defendant's mother before entering the home in which defendant was found. He determined that she was a resident of the home, asked if the defendant was present, and informed her that there had been some trouble. She responded that she was not sure if defendant was in the home. When asked again if the defendant might be there the detective testified that "she said 'no' and she nodded her head in the affirmative manner, and then she moved her head to the left with her eyes, like it was kind of looking inside." Because the mother said no but nodded affirmatively, the detective stated he "felt something was wrong in the house" because "she was telling us one thing and her body language was saying another."

The officers who entered the home also testified that eventually the mother gave express consent for them to enter. The mother denied this.

The trial court's finding, based on this conflicting testimony, is quoted at length in the majority opinion. The trial court clearly rejected the mother's version, concluding that it could not "say that there was· a refusal by Mrs. Santisteven to allow the officers into the house," and also that "there was not a denial of entry into her home."

The trial court explicitly stated that it was not making a finding whether the mother specifically invited the officers in by so many words, but restated that "there was no specific objection to the officers coming in."

The majority infers from these findings that the court rejected the police officers' testimony on the consent issue. In other words, because the trial court did not make a specific finding that the officers had or had not received an explicit verbal invitation to enter, the majority infers that the court was disbelieving all of the officers' testimony on the consent issue. I cannot join in this leap in logic.

If the trial court's findings contained no more than I have quoted above, the proper procedure would be to remand the cause for the trial court to enter a finding as to whether the officers were specifically told they could enter. However, there is more to the trial court's finding on this issue. The court made "a finding that there was passive consent under all the circumstances of [the mother's] conduct." That finding of fact, resting on a proper evidentiary basis, should be binding on us on review.

In my view, the logical consequence of the majority's rationale is to adopt a rule requiring that consent be formalized in the manner similar to the giving of *Miranda* warnings. This is not the law; rather, the court is to consider the totality of the circumstances. *People v. Savage, supra.* Moreover, such a rule would ignore the emotionally charged atmosphere present in situations encountered by police officers like those present here.

Accordingly, I would hold that the trial court's finding of consent was within his province as the finder of fact, thus making the entry and subsequent arrest of the defendant lawful, and allowing for receipt into evidence of the inculpatory statements he made thereafter.

In the alternative, even if I were to be persuaded that the trial court's finding is not specific enough, the proper remedy would be to remand the cause to the trial court with directions that it make specific findings and conclusions as to whether the officers' testimony of actual consent to the entry was correct. *See People v. Pierson,* 670 P.2d 770 (Colo.1983).

## II.

I cannot agree with the majority's holding that there exists no evidentiary basis for the trial court's conclusion that exigent circumstances were present which justified the warrantless arrest of the defendant.

The record demonstrates that the police knew that a stabbing resulting in the death of one man and wounding of another had occurred in the early hours of the morning. The defendant was identified as the perpetrator. He fled the scene with the knife used in the crimes, and likely had blood-stained clothing. The police were told that his mother had been informed of the stabbing, and that he was in her home. According to the police, it would take up to two hours to obtain a warrant at that time of the morning. Knowing all of these facts, two detectives approached the home, and when uniformed supporting officers appeared and surrounded the home the detectives talked with the mother, and being justifiably concerned by the surrounding circumstances, entered, found, and arrested the defendant.

The totality of these circumstances, *see People v. Henry,* 195 Colo. 309, 578 P.2d 1041 (1978), constitutes an evidentiary foundation for the trial court's conclusion that exigent circumstances justifying a warrantless arrest existed. The entry into the home and subsequent arrest of the defendant were justified because the circumstances were indicative of possible renewed flight which could well lead to possible injury to the officers or others.

With respect to the latter point, the testimony of one detective about his conclusions and feeling when conversing with the defendant's mother is critical. He said that she

"obviously knew that he [defendant] was there and within earshot, and that meant to me he was hiding someplace.

And the way she was acting she was trying to back out of it, you know, any action that might happen, the line of fire, so to speak."

And, the officer explained that the situation "made the hair stand up on the back of my neck."

Similarly, the circumstances showed the need for prompt police action to impede defendant's destruction or hiding of evidence—the murder weapon and the bloody clothing. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

The trial court's conclusion that exigent circumstances were present has an ample evidentiary foundation, and therefore is binding on review. *People v. Romero*, 42 Colo.App. 20, 593 P.2d 365 (1978). However, if the majority feels the trial court did not adequately state its reasons for finding exigent circumstances, it would be more appropriate to remand for more specific findings and conclusions of the issue, than to reverse the conviction.

### III.

I am also in disagreement with the majority's conclusion that *McCall v. People*, 623 P.2d 397 (Colo.1981) requires the holding that the defendant's statements should be suppressed. It is significant that, here, contrary to the situation in *McCall*, the police entered the home in good faith. Consequently, whatever disposition is made of the consent issue, I perceive no reversible error in the admission of defendant's statements.

For all of these reasons, I would affirm the conviction.